Breitel, J.
Defendants appeal. In an action for damages based on an allegedly fraudulent transfer or preference, the Supreme Court, New York County, denied defendants’ motion for summary judgment and granted plaintiff’s cross motion for the same relief. The Appellate Division affirmed in a memorandum (one Justice dissenting). It held that the prorata distribution of all its assets, located in Wisconsin, by defendant debtor (Trionics) to plaintiff (Trionics Research) and defendant Nautec, its two sole remaining creditors, while defendant debtor was insolvent and after plaintiff had obtained judgments in Illinois against Trionics in excess of the debtor’s assets, was a prohibited preferential or fraudulent transfer.
Plaintiff instituted this action against Trionics, Nautec, and the interlocking directorates of the two corporate defendants to recover damages for the payment made to Nautec. It contends, successfully thus far, that it was entitled to enforce its *577 Illinois judgments in full before the Wisconsin-based assets of the debtor could be validily transferred to other creditors. Plaintiff argues that the prorata distribution by the insolvent debtor was forbidden by the then section 15 of the Stock Corporation Law, and section 60 of the General Corporation Law (now partly covered by Business Corporation Law, § 720).
Defendants’ motion for summary judgment should have been granted and plaintiff’s cross motion denied. Because plaintiff had not executed on its Illinois judgments against defendant Trionics, and had not reduced those judgments to a lien in Wisconsin, it was an unsecured creditor, entitled to no more than a prorata sharing with defendant Nautec, also an unsecured creditor of Trionics. Since the payments were pro rata, plaintiff sustained no loss as compared with what it would have received in a fair distribution, and absent a lien in favor of plaintiff defendants owed no duty to plaintiff to abstain from effectuating a fair distribution of the remaining assets. Hence, the payments were neither preferential nor fraudulent, although made while Trionics was insolvent and only 10 days after attempted execution in Illinois on plaintiff’s judgments had been returned unsatisfied. The precise issue is evidently one of first impression.
Defendant Trionics is an Illinois corporation which did business in New York and principally in Wisconsin. At the pertinent times, 95% of its stock was owned by defendant Nautec, a New York corporation, and the remainder by plaintiff, also an Illinois corporation. By June 30, 1963, defendant Trionics, after experiencing continuous financial losses during the six years of its existence, was insolvent. It had terminated its general operations six months earlier. By the end of 1963 it had paid all its creditors with the exception of defendant Nautec, which held a long-term subordinated convertible debenture bond in the sum of $410,885, and plaintiff, which held short-term notes in the total sum of $25,000. The bond held by Nautec resulted from a series of loans and advances made to Trionics from the time Nautec had acquired a controlling interest in Trionics from plaintiff in May, 1959. Plaintiff’s notes represented earlier loans made to Trionics at' the time of its incorporation in 1957.
*578 Following an unsuccessful demand for payment of its notes, plaintiff commenced an action against defendant Trionics in Illinois. On January 27 and 28, 1964 plaintiff obtained judgments aggregating $31,221.33 (the outstanding debt plus interest). On February 4, 1964 execution on the judgments was issued to the Sheriff of Cook County, Illinois; the execution was personally served on the Illinois agent of Trionics on February 27, 1964 (and mailed the same day to its New York office), but was returned unsatisfied. Plaintiff avers that it was unable to locate any assets in Illinois or in Wisconsin, the situs of the principal place of business of Trionics and of the bank upon which the prorata payment checks were drawn.
On March 9, 1964, the president of defendant Trionics wrote Nautec and plaintiff, stating that Trionics was making a prorata distribution to them as the sole remaining creditors of its remaining assets, consisting of moneys in the sum of $21,256.83. Enclosed with each communication was a check, one to Nautec for $19,811.37 (in payment of a total indebtedness of $426,712.26) and one to plaintiff for $1,445.46.
None of the parties questioned that the New York statutes should be applied to this transfer by an Illinois corporation of funds held in a Wisconsin bank. It is, therefore, assumed, as did the parties, that New York law applies (see Stock Corporation Law, § 114, then providing that the officers, stockholders and directors of a foreign corporation transacting business in New York are liable for “ Illegal transfers of the * * * property of such corporation, when it is insolvent ” in the same manner as the officers, stockholders and directors of a domestic corporation [now Business Corporation Law, § 720]).
Under section 15 of the Stock Corporation Law, any transfer of property by an insolvent corporation with the intent of giving a preference to any particular creditor over other creditors is invalid, with exceptions not now relevant. This section, as well as section 60 of the General Corporation Law, also makes the directors and officers personally liable to creditors to the extent of the loss suffered by reason of such improper transfers.
To establish a preference, it must be shown that the transfer to one creditor results in the nonpayment or disproportionate payment of creditors with similar or superior interests in the corporate assets (12 N. Y. Jur., Corporations, §§ 633, 635; *579 15A Fletcher’s Cyclopedia Corporations [1967 rev.], § 7434, p. 189). Whether any creditor has sustained a compensable loss is determined by comparing what it in fact received with what it would have received had there been no transfer (Buckley Petroleum Prods, v. Schwartz, 28 A D 2d 640, 641; Shaw v. Jewel Radio Corp., 6 A D 2d 707, 708; Hewlett Park Co. v. 1193-1205 East Broadway of Hewlett, 32 Misc 2d 691, affd. 17 A D 2d 736; also see Curran v. Oppenheimer, 164 App. Div. 746, 749, affd. 222 N. Y. 615).
In the absence of effective liens or other priorities, plaintiff and defendant Nautec, as the sole creditors of Trionics, were each entitled only to a prorata share of Trionics’ assets. The instant transfers thus achieved that fair distribution to all creditors which the statutes are designed to ensure (15A Fletcher’s Cyclopedia Corporations [1967 rev.], § 7450, pp. 221-222; see Whalen v. Strong, 248 App. Div. 672, mod. 249 App. Div. 792, affd. 275 N. Y. 516). The cases relied upon by plaintiff involve transfers to one creditor whereby a creditor with an equal or superior right was excluded completely from sharing in the insolvent corporation’s assets (see, e.g., Shaw v. Jewel Radio Corp., 6 A D 2d 707, supra; Bartle v. Finkelstein, 19 A D 2d 256, 259). In those cases, therefore, there was a preference of one creditor over others. Here each creditor was treated equally, in precisely the same fashion as if Trionics had made an assignment for the benefit of creditors or had gone into bankruptcy. Plaintiff thus sustained no compensable loss.
Plaintiff maintains, however, that by virtue of its Illinois judgments, it obtained a superior interest in the Wisconsin assets over Nautec and was entitled to satisfy its judgments out of the assets before any distribution was made to the “ junior ” creditor. But, plaintiff could not obtain a lien against the Wisconsin assets until its Illinois judgments were reduced to judgment and execution in Wisconsin.* Without such a lien, *580 plaintiff did not establish a right as senior creditor to the remaining assets of Trionics to the exclusion of Nautec.
Plaintiff does not contend that it in fact did have a lien, but argues that it should be considered as if it had one for purposes of determining whether the transfers were preferential or fraudulent. It reasons that it would have been able to levy successfully against the assets of Trionics if not for defendants’ haste in distributing them. However, the validity of the transfer must be determined at the time of transfer. Moreover, whether plaintiff would have obtained a lien if the transfer had not occurred is speculative. Plaintiff’s position is, in effect, that it would have had a valid priority if it had had a lien, and that its opportunity to obtain such a priority was frustrated by defendants’ conduct in effectuating a fair prorata distribution. But, as a matter of law, it obtained no priority because it had no lien, and without a lien every equitable, as well as legal, consideration required a prorata distribution. Indeed, the judgment lien, if it had been effected, would itself have been vulnerable as a preference under the, bankruptcy laws (U. S. Code, tit. 11, § 107) or as a preferential transfer under State statutes (see Throop v. Hatch Lithographic Co., 125 N. Y. 530, 535; Greiss v. Scarborough Estates, 14 N Y 2d 39, 41-42, citing the Throop case and holding that, although a creditor may obtain a judgment against an insolvent corporation, levy pursuant to such a judgment might constitute an invalid preference). As the dissenting Justice at the Appellate Division commented: “If the payment to Nautec is preferential, then also the payment which was made to plaintiff on account of its claim was preferential. If the defendant should institute voluntary bankruptcy or insolvency proceedings, the payment to plaintiff as well as the payment to Nautec would be marshalled and distributed pro rata. As a result, plaintiff would receive no more than the amount already paid to it and, in fact, it would receive less because of the deduction of the expenses of such proceedings. ’ ’
At no time did plaintiff dispute the bona fides of Nautec’s claim against Trionics. Nor is there any issue as to the intent or purpose in making the prorata distribution. Thus, there are no issues of fact to be resolved. Each creditor received *581 the sum of money to which it was entitled, and, therefore, there was neither a preference nor a fraudulent transfer.
Accordingly, the order of the Appellate Division should he reversed, with costs, plaintiff’s cross motion for summary judgment should be denied, and defendants’ motion granted.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Jasen concur with Judge Breitel; Judge Keating taking no part.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.

 See, e.g., Cole v. Curmingham (133 U. S. 107, 112). “No execution can be issued upon [sister State] judgments without a new suit in the tribunals of other States, and they enjoy, not the right of priority or privilege or lien which they have in the State where they are pronounced, but that only which the lex fori gives to them by its own laws, in their character of foreign judgments.” (See, also, Restatement, Judgments, § 47, Comment e; Ehrenzweig, Conflict of Laws, p. 216; Goodrich, Conflict of Laws [3d ed.], § 204.)