**In re WEDTECH CORPORATION, f/k/a Welbilt Electronics Die Corp., Debtor.**

**WEDTECH CORPORATION, f/k/a Welbilt Electronics Die Corp., Plaintiff,**

v.

**Franklyn C. NOFZIGER, Mark A. Bragg, Nofziger & Bragg Communications, Defendants.**

No. 88–5300A.

United States Bankruptcy Court, S.D. New York.

July 15, 1988.

Pollner, Mezan, Stolzberg, Berger & Glass, P.C. by John H. Reichman, and Melissa P. Zelen, New York City, for debtor.

Laxalt, Washington, Perito & Dubuc by Robert Plotkin, Washington, D.C., Huber, Lawrence & Abell by James Sirotal, New York City, for defendants.

Stroock & Stroock & Lavan by Bonnie Schindel, New York City, for Creditors Committee.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III,
Bankruptcy Judge.

When Wedtech Corporation ("Wedtech" or "Plaintiff") filed its petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1986), on December 15, 1986, it brought with it almost unmatched charges of criminality by its officers, directors, consultants and various former and current public officials. Since then, some of these people have been convicted. This case concerns the potential civil consequences of one of those convictions.

Franklyn C. Nofziger, Mark A. Bragg, and Nofziger & Bragg Communications, (collectively, the "Defendants"), request an order, pursuant to Rule 7012(b) of the Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing Wedtech's complaint, which seeks the return of sums and value paid to Defendants pursuant to an allegedly illegal lobbying contract. In opposing Defendants' motion to dismiss, Wedtech has cross-moved for summary judgment pursuant to Rule 7056 of the Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure.

### I. The Motion to Dismiss

#### A

The Complaint seeks return of all consideration paid to Defendants pursuant to an alleged arrangement whereby Defendant Nofziger was to lobby persons working in various government agencies on Wedtech's behalf. In support, it recites that prior to its filing for bankruptcy, Wedtech was a manufacturer of machinery and equipment. (Complaint at ¶ 1). Before 1982, Wedtech received various contracts from the United States Department of Defense under a program administered by the United States Small Business Administration (the "SBA") which secures certain government procurements for the exclusive participation of qualified minority-owned small businesses. (*Id.* at ¶¶ 8, 9). At all relevant times, Wedtech qualified for the program as a minority-owned company. (*Id.* at ¶ 8).

Beginning in 1979, Wedtech sought to obtain a contract from the United States Government to manufacture more than 13,000 standard military engines (the "engine contract") for the Department of the Army (the "Army"). (*Id.* at ¶ 10). Believing that Wedtech lacked the capabilities to complete the contract and asked an unreasonably high price, the Army opposed awarding the engine contract to Wedtech. (*Id.* at ¶ 12).

Nofziger was employed by the Executive Office of the President (the "White House") as Assistant to the President for Political Affairs from January 21, 1981 to January 22, 1982. (*Id.* at ¶ 13). He supported and promoted White House actions designed to aid Wedtech's efforts to obtain the engine contract (*Id.*).

The same day that Nofziger left his position at the White House on January 22, 1982, he created, with Defendant Mark Bragg, a consulting and lobbying joint venture known as Nofziger & Bragg Communications, also a Defendant. (*Id.* at ¶¶ 15, 16).

With the foregoing as background, the Complaint further alleges that by March 1982, Wedtech had reached an impasse in the negotiations with the Army concerning the awarding of the engine contract. Wedtech then orally contracted with Nofziger & Bragg Communications to lobby the SBA, the Army, and the White House to assist it in securing the engine contract. (*Id.* at ¶ 17). Pursuant to that arrangement, Nofziger, on April 8, 1982, on behalf of Wedtech, wrote to Edwin Meese, who was then Counselor to the President and a White House employee. (*Id.* at ¶ 23). Five

months later, Wedtech was awarded the engine contract. (*Id.* at ¶ 18). For so communicating with Meese, Nofziger was subsequently indicted and convicted of violating the Federal Ethics in Government Act, 18 U.S.C. § 207(c). (*Id.* at ¶ 27).[1]

Wedtech asserts that it paid at least $257,929.65 in cash to Defendants as consideration for their lobbying activities. (*Id.* at ¶ 28). In addition, Nofziger and Bragg were each issued 22,500 shares of Wedtech common stock for their lobbying work with respect to the engine contract. (*Id.* at ¶ 32). They subsequently sold their Wedtech stock for a total of $651,750. (*Id.* at ¶ 33).

The Complaint alleges that the total of $909,499.65 in cash and stock transferred to Defendants is voidable and recoverable under section 544(b) of the Bankruptcy Code, 11 U.S.C. § 544(b). (*Id.* at ¶ 38). Section 544(b) empowers a trustee in bankruptcy to void any transfer of an interest of the debtor's property that is voidable under federal or state law by a creditor with an allowable claim. Wedtech argues that since the contract with Nofziger and Bragg contemplated illegal lobbying activity, payments for services rendered under the contract are voidable under section 720 of the New York Business Corporation Law, N.Y.Bus.Corp.Law § 720 (McKinney 1986). (*Id.* at ¶ 37).

In support of their motion to dismiss, Defendants make four principal arguments:[2] (1) under the common law doctrine of *in pari delicto*, Wedtech is not entitled to relief because contracts to perform illegal acts are unenforceable and, under

---

**1.** In pertinent part, the Federal Ethics in Government Act provides:

(c) Whoever ... having been so employed ..., within one year after such employment has ceased, knowingly acts as agent or attorney for, or otherwise represents, anyone other than the United States, ... with the intent to influence, makes any oral or written communication on behalf of anyone other than the United States, to—

    (1) the department or agency in which he served as an officer or employee, ... and

    (2) in connection with any ... contract ... or other particular matter, and

    (3) which is pending before such department or agency or in which such department

or agency has a direct and substantial interest—

shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

18 U.S.C.A. § 207(c) (West Supp.1988).

**2.** Defendants briefly argue that Nofziger's conviction does not automatically operate to void the entire transaction and thus they can only be partially liable. Where a plaintiff may be entitled to some relief, however, a motion to dismiss a complaint may not be granted. *Dopico v. Goldschmidt*, 687 F.2d 644, 649 (2d Cir.1982).

New York law, no action to recover payments made on an illegal bargain is permitted; (2) Wedtech did not have an actual unsecured creditor with an allowable claim in existence at the time of the transfer, as allegedly required by section 544(b) of the Bankruptcy Code; (3) Defendant Nofziger's activity is not legally imputable to Defendants Bragg and Nofziger & Bragg Communications and, therefore, the motion to dismiss must be granted with respect to those two Defendants; and (4) the complaint does not allege either that Defendants were directors, officers, or insiders of Wedtech or that Defendants had specific knowledge of the unlawfulness of the transfer, as allegedly required by section 720.

### B

On a Rule 12(b)(6) motion, it is elementary that the factual allegations of the complaint are presumed true and all reasonable inferences are drawn in favor of the plaintiff. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *Prudential Lines, Inc. v. United States Maritime Admin. (In re Prudential Lines, Inc.),* 79 B.R. 167, 171 n. 1 (Bankr.S. D.N.Y.1987). When reviewing the sufficiency of a complaint, the pivotal issue is whether the plaintiff is entitled to present evidence to support its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974). In a word, dismissal is proper only when the plaintiff would not be entitled to any type of relief, even if it were to prevail on the merits of its factual contentions. *Dopico v. Goldschmidt,* 687 F.2d 644, 649 (2d Cir.1982).

### C

■ In this light, we first consider Defendants' assertion that the *in pari delicto* doctrine precludes Wedtech, now a Chapter 11 debtor, from bringing this suit. Were Wedtech not in bankruptcy, this assertion would have some merit. The courts' reluctance to enforce illegal bargains rests on

the fundamental principle that anyone who has engaged in a violation of a law may not be allowed to invoke any right or claim for relief stemming from the illegal transaction. *Gibbs & Sterrett Mfg. Co. v. Brucker,* 111 U.S. 597, 601, 4 S.Ct. 572, 574, 28 L.Ed. 534 (1884).

Wedtech, however, is bankrupt and as a debtor-in-possession has the same rights and powers as a trustee. *Wolf v. Weinstein,* 372 U.S. 633, 649–50, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963); 11 U.S.C. § 1107(a). In exercising avoidance powers under section 544(b), a trustee acts as a representative of the creditors of the estate. *Hassett v. McColley (In re O.P.M. Leasing Serv. Inc.),* 28 B.R. 740, 761 (Bankr.S.D.N.Y.1983); *accord Merrill v. Abbott (In re Indep. Clearing House Co.),* 41 B.R. 985, 999 (Bankr.D.Utah 1984). Hence, a trustee's ability to obtain a recovery for an estate and its blameless creditors may not be denied by the pre-petition wrongful conduct of the debtor. *See In the Matter of Carla Leather, Inc.,* 44 B.R. 457, 469–70 (Bankr.S.D.N.Y.1984), *aff'd,* 50 B.R. 764 (S.D.N.Y.1985); *see also Gower v. Farmers' Home Admin. (In re Davis),* 755 F.2d 926, 927 (11th Cir.1986); *Hassett v. McColley,* 28 B.R. at 761. For these reasons, the Second Circuit has ruled that an *in pari delicto* defense based on the unlawfulness of a transaction may not be used to defeat a claim by a trustee in bankruptcy to recoup corporate assets illegally transferred in violation of the federal conflict of interest statute, 18 U.S.C. § 203. *Podell & Podell v. Feldman (In re Leasing Consultants Inc.),* 592 F.2d 103, 109 (2d Cir.1979). The defense of *in pari delicto* is thus equally inapplicable here.

### D

■ Also without merit is Defendants' assertion that section 544(b) of the Bankruptcy Code requires Wedtech to plead the existence of a creditor at the time of the transaction. The statute on its face imposes no such condition.[3] Rather, section

---

**3.** Section 544(b) provides:
  The trustee may avoid any transfer of an interest of the debtor in property or any obli-

gation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under sec-

544(b) provides no guidelines to determine when and under what circumstances a particular transfer may be avoided; those circumstances are set by the applicable law affording grounds for avoidance. 4 *Collier on Bankruptcy* ¶ 544.03 (15th ed. 1988); *see also In re Lico Mfg. Co. Inc.,* 201 F.Supp. 899, 903 (D.Conn.), *aff'd.* 323 F.2d 871 (2d Cir.1963) (Existence of a creditor at the time of the transaction not required by former section 70(e), the predecessor statute to section 544(b); only applicable requirements are those contained in the state law giving rise to the cause of action pleaded). In accord are *Verco Indus. v. Spartan Plastics (In re Verco Indus.),* 704 F.2d 1134 (9th Cir.1983), *Riegle v. Leinheiser (In re Leinheiser),* 51 B.R. 164 (Bankr.E.D.Pa.1985), *Wick v. Yost (In re Yost),* 47 B.R. 697 (Bankr.W.D.Va.1985), and *Greene v. Newman (In re Newman),* 11 B.R. 628 (Bankr.S.D.N.Y.), *aff'd,* 15 B.R. 658 (S.D.N.Y.1981) on which Defendants rely. In these cases, the applicable state law afforded standing only to a creditor in existence at the time of the transaction.

Here, however, section 720(b) explicitly allows a trustee in bankruptcy to bring an action under section 720.[4] Since Wedtech, as a debtor-in-possession, has that status, the state law standing requirement is satisfied.

### E

■ Assuming, as we must, the truth of the allegation that Defendants are engaged in a joint venture, the motion to dismiss as to Defendants Bragg and Nofziger & Bragg Communications must also be denied. In general, a joint venture is an informal partnership among two or more persons for a limited goal or objective. *Sadwith v. Lantry,* 219 F.Supp. 171, 177 (S.D.N.Y.1963).[5] The characteristics and legal consequences of a joint venture are virtually identical with those of a partnership. *N. River Ins. Co. v. Spain Oil Corp.,* 135 Misc.2d 480, 482, 515 N.Y.S.2d 703, 705 (N.Y.Sup.Ct.1987); *see In re Roxy Roller Rink Joint Venture,* 67 B.R. 479, 483 (S.D.N.Y.1986) (A joint venture is generally treated as a partnership with the only significant difference between a joint venture and partnership being that joint ventures are usually organized for a limited time and purpose).

■ It is axiomatic that the joint and several liability of a partner and the partnership for a partner's conduct within the scope of partnership business requires neither actual participation in nor knowledge of the wrongful conduct before liability may be imposed, *Northwestern Nat. Bank of Minneapolis v. Fox & Co.,* 102 F.R.D. 507, 512 (S.D.N.Y.1984); the injured party may bring an action against any or all of the partners in their individual capacities and against the partnership as an entity. *Fanelli v. Adler,* 131 A.D.2d 631, 631–32, 516 N.Y.S.2d 716, 717 (N.Y.App.Div.1987); *see* N.Y.Partnership Law § 24 (McKinney 1948); Uniform Partnership Act § 13; *see also Zuckerman v. Antenucci,* 124 Misc.2d 971, 972, 478 N.Y.S.2d 578, 579 (N.Y.Sup. Ct.1984) (When a partner injures a third party, such third party has the right to sue any or all of the partners, individually or collectively, even one who did not cause the harm). Thus, if a true joint venture exists, as Defendants appeared to concede at the hearing on this motion, Bragg and Nofziger & Bragg Communications may be jointly and severally liable for Nofziger's illegal activity within the scope of the partnership business.

### F

■ We, therefore, turn to Defendants' principal contention on this motion: the

---

tion 502 of this title or that is not allowable only under section 502(e) of this title.
11 U.S.C. § 544(b) (1986).

**4.** Section 720(b) provides in relevant part:
(b) An action may be brought for the relief provided in this section ... by a ... trustee in bankruptcy....
N.Y.Bus.Corp.Law § 720 (McKinney 1986).

**5.** Although the joint venture is apparently located in the District of Columbia and Defendants assert that District of Columbia law applies, they do not claim that the applicable District of Columbia law regarding the liability of coventurers under partnership principles differs from that applicable in New York. Thus, in the absence of a conflict, no choice of law problem is presented on this point.

complaint fails to plead that Defendants were officers or directors of Wedtech and that they knew of the illegality of the alleged contract and thus fails to plead a cause of action under applicable state law. The applicable law at issue here is section 720 of New York Business Corporation Law. That section provides in relevant part:

(a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:

(1) To compel the defendant to account for his official conduct in the following cases:

(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.

(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

(2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

(3) To enjoin a proposed unlawful conveyance, assignment or transfer of corporate assets, where there is sufficient evidence that it will be made.

N.Y.Bus.Corp.Law § 720 (McKinney 1986).

By its terms, section 720 imposes liability on directors and officers of a corporation for every diversion of corporate assets for improper or unnecessary purposes, whether as a result of intention or negligence. *Goldberg v. Meridor*, 567 F.2d 209, 219–20 (2d Cir.), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1977); *Rapoport v. Schneider*, 29 N.Y.2d 396, 400, 278 N.E.2d 642, 644–45, 328 N.Y.S.2d 431, 435 (1972).

Defendants' contention that section 720 authorizes a claim for relief only against Wedtech's officers or directors misconceives the scope of section 720. While section 720 explicitly sanctions actions against corporate directors and officers, section 720(a) also expressly allows recovery against the transferee of misappropriated corporate assets. Furthermore, section 720 has consistently been construed broadly to allow claims for relief solely against the transferees of the unlawfully conveyed assets. *Atlanta Shipping Corp. v. Chemical Bank*, 631 F.Supp. 335, 350 (S.D.N.Y. 1986), *aff'd*, 818 F.2d 240 (2d Cir.1987). In *Leasing Consultants*, the Second Circuit held that section 720 imposed liability not only on the officers and directors of a corporation, "but also on 'the actual recipient of money wrongfully withdrawn from the corporation.'" 592 F.2d at 109 (quoting *Singer v. State Laundry, Inc.*, 188 Misc. 583, 586–87, 68 N.Y.S.2d 808, 812 (N.Y.Sup.Ct.1947); *see also First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744, 749 (S.D.N.Y.1966) (Weinfeld, J.) (Anyone who knowingly joins or engages in an enterprise whereby a violation of a fiduciary obligation is caused is jointly and severally liable under common law with the derelict fiduciary). The wrongfully diverted funds may be traced, identified and recovered, unless they are in the hands of a bona fide purchaser for value. *In re Leasing Consultants*, 592 F.2d at 110. Given the broad construction of section 720 by the courts, Wedtech may sue Defendants under section 720 as recipients of wrongfully acquired monies.

The failure of the complaint to allege that Defendants knew of the unlawfulness of the payments is, moreover, of no significant consequence in light of case law interpreting section 720. Although the language of section 720(a)(2) would appear to require a transferee to know of the unlawfulness of the conveyance, section 720 in its entirety has been the subject of considerable judicial gloss, principally in *Leasing Consultants*. There the Second Circuit applied section 720, which contained the precise statutory language referring to such knowledge that is relied on by Defendants here, *see* 592 F.2d at 109 n. 1, to uphold a trustee's right to recover fees transferred to a New York law firm. In that case, Bertram Podell, a named partner of the law firm and a member of Congress, received legal fees and campaign contributions from representatives of Leasing Consultants, in

return for "advocating the interests" of a subsidiary company of Leasing Consultants before various government agencies. *United States v. Podell,* 572 F.2d 31, 33 (2d Cir.1978). Podell pleaded guilty to one count of conspiracy to defraud the United States and to violate the conflict of interest statute, 18 U.S.C. § 371, and one count of accepting compensation in violation of 18 U.S.C. § 203. *Id.* at 33–34; *see United States v. Podell,* 519 F.2d 144 (2d Cir.), *cert. denied,* 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975). Given this factual background, the court made no inquiry into whether Podell knew the acts he performed were unlawful. "[E]xtend[ing] aid to innocent creditors, in furtherance of the Bankruptcy Act, and strip[ping] a government servant of profit from a breach of duty, in furtherance of the aims of the federal conflict of interest statute", 592 F.2d at 111, the court held that the trustee may use section 720 to recover unlawfully transferred funds from Podell's law firm. Thus, the court implicitly interpreted the language in section 720(a)(2), "where the transferee knew of its unlawfulness", to be satisfied whenever an action to recover wrongfully diverted funds is brought against the person, or entity, who committed the unlawful deed. *In re Leasing Consultants,* 592 F.2d at 109–10. Under *Leasing Consultants,* therefore, a criminal participant in an illegal conveyance is not protected by section 720:

> [It is] settled law that the officers and directors of a corporation stand in a fiduciary relation to it and owe it a duty not to divert its property to other than proper corporate purposes, that if they wrongfully divert it they breach that duty, and *the wronged corporation is entitled to follow the diverted property … until it comes into the hands of a bona fide purchaser for value.*

592 F.2d at 109–10 (quoting *In re Cohen's Estate,* 137 N.Y.S.2d 300, 309 (N.Y.Sup.Ct. 1954), *aff'd,* 285 A.D. 1119, 141 N.Y.S.2d 819 (N.Y.App.Div), *aff'd,* 309 N.Y. 935, 132 N.E.2d 311 (1955)).

Defendants attempt to distinguish *Leasing Consultants* on the ground that Podell's conspiracy conviction under 18 U.S.C. § 371 ("section 371") automatically satisfies the knowledge requirement of section 720 while Nofziger's conviction does not. This attempt fails for two reasons. First, it disregards the broad cast of the court's language in *Leasing Consultants* which subjects a transferee who participated in illegal activity to return the property regardless of knowledge of illegality. Secondly, even were the broad cast of the language in *Leasing Consultants* put aside, Defendants' argument ignores the pleading of Nofziger's conviction.

If *Leasing Consultants* were read narrowly, the argument might, at first blush, appear to have some merit. To obtain a conviction for conspiracy under section 371, it must be proven that the defendant agreed to the scheme with some knowledge that the scheme had an illegal objective. *United States v. Wiley,* 846 F.2d 150, 153–54 (2d Cir.1988). Nevertheless, the analysis does not end at this point as Defendants claim. It is also settled that the degree of knowledge needed to be proven under section 371 is the same, and no greater, as that required by the substantive offense alleged to be the object of the conspiracy. *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), *Ingram v. United States,* 360 U.S. 672, 678–79, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); *United States v. Craig,* 573 F.2d 455, 485 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978), *United States v. Mauro,* 501 F.2d 45, 51 (2d Cir. 1974), *cert. denied,* 419 U.S. 969, 95 S.Ct. 235, 42 L.Ed.2d 186 (1975); *United States v. Koenig,* 388 F.Supp. 670, 699 (S.D.N.Y. 1974).

Thus, Defendants' attempt to distinguish even a narrow reading of *Leasing Consultants* is untenable. Indeed, when faced with the same argument in Podell's appeal, the Second Circuit, in dismissing Podell's assertion that his guilty plea to conspiracy must be withdrawn because he had not acted with knowledge that he was breaking the law, said that "since knowledge of illegality is not necessary for a substantive conviction under 18 U.S.C. § 203 …, such knowledge is also not necessary for a con-

spiracy conviction." *United States v. Podell,* 519 F.2d at 150 n. 7. That level of mens rea was subsequently held, in *Leasing Consultants,* sufficient to compel Podell to return the monies he received, even though it was never shown that he had knowledge of illegality. 592 F.2d at 105. Since the complaint here pleads that Nofziger was convicted under the Ethics in Government Act, it necessarily pleads that he had sufficient mens rea. Even were *Leasing Consultants* read narrowly, that is all that it requires. For both these reasons and since *Leasing Consultants* remains binding precedent on this Court, Wedtech's complaint is sufficient here.

The distinction under section 720 between an alleged accomplice to wrongful acts and an innocent third party is illuminated by a more recent case, *Atlanta Shipping Corp. v. Chemical Bank,* 631 F.Supp. 335, 350 (S.D.N.Y.1986), *aff'd,* 818 F.2d 240 (2d Cir.1987), where the court held that a complaint, which charged a transferee bank with aiding and abetting corporate officers who transferred funds to the bank in violation of their fiduciary duties, sufficiently pleaded a cause of action under section 720. *Id.* at 349–50; *see also Trionics Research Sales Corp. v. Nautec Corp.,* 28 A.D.2d 664, 280 N.Y.S.2d 630 (N.Y.App. Div.1967), *rev'd on other grounds,* 21 N.Y. 2d 574, 237 N.E.2d 68, 289 N.Y.S.2d 745 (1968). Since aiding and abetting liability requires no separate knowledge of the illegality of the crime but only a "purpose ... to encourage or assist another in the commission of a crime as to which the accomplice has the requisite mental state," W. LaFave & A. Scott, *Criminal Law* § 6.7, at 579–80 (2d ed. 1986), the *Atlanta Shipping* court apparently was of the view that such mens rea was all that is required.

As applied by these cases, it thus appears that section 720(a)(2) is to be interpreted to require pleading and proof of a mere transferee's knowledge of illegality, but not where the transferee is one who participates in an illegal transaction and is paid for the service. In light of this and the failure of the New York legislature to rewrite the statute in the nine years since *Leasing Consultants* was decided, we hold that, even under a narrow reading of *Leasing Consultants,* Wedtech is not required under section 720 to prove that Nofziger had a higher mental state than that found on his conviction. On either reading of *Leasing Consultants,* therefore, the motion to dismiss must be denied.

## II. The Motion for Summary Judgment

### A

■ With respect to Wedtech's motion for summary judgment, it is self-evident that the moving papers do not demonstrate the absence of a genuine issue as to at least one highly material fact, the scope and nature of the alleged oral agreement between Wedtech and Nofziger and Bragg Communications. The pervasiveness of this issue lies in Wedtech's claim, relying on *McConnell v. Commonwealth Pictures Corp.,* 7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960), that Nofziger's one illegal act voids the entire transaction, including even payments for legal acts, because the illegal conduct was central to or a dominate part of the contemplated performance of the contract.[6] Summary judgment may thus not be granted.[7] *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Alternatively, Wedtech seeks to have the illegality of Nofziger's contact with Meese established pursuant to Rule 56(d) of the Federal Rules of Civil Procedure on the basis of collateral estoppel arising from his criminal conviction. That criminal conviction, however, is currently being appealed. It is black letter law that "a final judgment retains all of its res judicata or collateral

---

**6.** Defendants claim that District of Columbia law applies to this issue and that District of Columbia law would treat the contract as legal if it could, by its terms, be performed legally, even if actually performed in an illegal manner. *Cochran v. Burdick,* 70 F.2d 754, 756 (D.C.Cir.), *cert. denied,* 293 U.S. 561, 55 S.Ct. 73, 79 L.Ed. 661 (1934). On these motions, we have not

been presented with facts sufficient to determine the applicable law under choice of law rules; nor has the choice of law issue been adequately briefed.

**7.** Wedtech has not submitted an affidavit of anyone with knowledge of the contract in issue.

estoppel consequences pending decision of the appeal." 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4433 (1981). But, reversal of a final judgment given preclusive effect also requires reversal of the decision in the second case. 1B *Moore's Federal Practice* ¶ 0.416[4] (1984). We, therefore, see no reason to establish the illegality of Nofziger's conduct on that basis at this stage of the case. *See Superior Oil Co. v. City of Port Arthur*, 535 F.Supp. 916, 921 (E.D.Tex.1982); *cf. United States v. Stauffer Chemical Co.*, 464 U.S. 165, 176, 104 S.Ct. 575, 581, 78 L.Ed.2d 388 (1984) (White, J., concurring). There is a dominant issue to be tried and, given Wedtech's theory, the appeal will affect whether Wedtech will be able to establish the illegality of Nofziger's conduct by application of collateral estoppel or be required to prove the point.

For the foregoing reasons, Defendants' motion to dismiss the complaint and Plaintiff's motion for summary judgment must be and hereby are denied. It is

SO ORDERED.