**In re WEDTECH CORPORATION, f/k/a Welbilt Electronics Die Corp., Debtor.**

**WEDTECH CORPORATION, f/k/a Welbilt Electronics Die Corp., Plaintiff,**

v.

**BIAGGI AND EHRLICH, a partnership, Richard M. Biaggi, Bernard G. Ehrlich, and Mario Biaggi, individually and as members of the partnership, Defendants.**

**Bankruptcy No. 86 B 12366. Adv. No. 88–5150A.**

United States Bankruptcy Court, S.D. New York.

March 7, 1992.

See also 138 B.R. 5.

J. Reichman, Esq., Gold & Wachtel, New York City, for Matthew Harrison, as Liquidating Agent of the Wedtech Liquidating Trust, successor to plaintiff Wedtech Corp. (Wedtech).

D. Amorosa, New York City, for Richard Biaggi.

### MEMORANDUM OF DECISION ON SUMMARY JUDGMENT

FRANCIS G. CONRAD,* Bankruptcy Judge.

Wedtech was a manufacturer of machinery and equipment, whose major source of income derived from manufacturing materials for the United States Department of Defense ("DOD"). The DOD contracts were obtained under the section 8A program of the Small Business Administration ("SBA"), which allowed qualified minority-owned businesses to receive government contracts on a no-bid basis.

Mario Biaggi was a member of the House of Representatives and was associated with the law firm Biaggi & Ehrlich ("B & E"), first as a partner, then as "of counsel". Richard Biaggi was also a member of B & E. In 1978, B & E was retained as Wedtech's outside counsel.

When Wedtech went public in mid–1983, 112,500 shares of Wedtech stock, representing 2.5% of Wedtech's outstanding stock, were issued in the name of Richard

* Sitting by Special Designation.

Biaggi. Another 112,500 shares of stock were issued in the name of Bernard Ehrlich, a partner in the firm of B & E. It was contended that the shares of stock were issued to Bernard Ehrlich and Richard Biaggi, as members in the law firm B & E, in fulfillment of a promise to recognize the firm's loyalty to Wedtech when it was developing and not able to adequately compensate the firm.

A restriction at the time of the issuance prohibited sale of the shares for two years. This constraint made it difficult to place a value on the stock when issued. The law firm's accountant set the value at $34,000 for each recipient. In 1985, when the restriction was lifted, Richard Biaggi sold approximately one-third of his shares for more than $600,000.

In 1987, an indictment was returned against Richard Biaggi, Mario Biaggi, and others that stemmed from Wedtech's acquisition of the DOD contracts. The indictment charged, *inter alia*, that Mario Biaggi had extorted the shares putatively given to Ehrlich and Richard Biaggi in return for using his influence to secure DOD contracts for Wedtech from the SBA. Mario Biaggi allegedly requested that the stock be placed in the names of nominees to circumvent a cap on outside earnings by members of the House of Representatives.

Richard Biaggi was indicted for knowingly filing false tax returns that overstated his income for 1983, when the shares were issued in his name, and 1985, when he purportedly sold one-third of them. He was also charged with racketeering, bribery, and mail fraud.

In August 1988, Mario Biaggi was convicted of racketeering, extortion, bribery, mail fraud, false financial disclosure, and filing a false tax return. On appeal to the Second Circuit Court of Appeals, his convictions were affirmed. Richard Biaggi's convictions on bribery and fraud charges were reversed on appeal, but, his conviction for tax offenses was affirmed.

Wedtech filed its Chapter 11 bankruptcy petition on December 15, 1986.

### The Instant Action

As Debtor-in-possession [1], Wedtech commenced [2] an adversary proceeding against Richard Biaggi, under § 544(b) of the Bankruptcy Code (the "Code"), to recover the $600,000.00 Richard Biaggi received in 1985, when he sold a portion of the stock.

Section 544(b) of the Code is "a conduit to state law substantive remedies." *Wedtech Corp. v. Denlinger (In re Wedtech)*, 121 B.R. 286, 292 (Bkrtcy.S.D.N.Y.1990). The section affords the trustee the opportunity to avoid "any transfer of an interest of the debtor's property that is voidable under federal or state law by a creditor with an allowable claim." *Wedtech Corp. v. Nofziger (In re Wedtech)*, 88 B.R. 619, 621 (Bkrtcy.S.D.N.Y.1988). Wedtech seeks to avoid the transfer of the stock to Richard Biaggi under New York Business Corporation Law § 720 (N.Y.Bus.Corp.Law § 720) (McKinney 1986 & Supp.1992) ("BCL § 720"), which authorizes a bankruptcy trustee [3] to set aside an illegal transfer of corporate assets. Wedtech also seeks to avoid the transfer of stock based upon a theory of unjust enrichment.[4]

**1.** Section 1107 of the Bankruptcy Code gives the debtor-in-possession the powers of a trustee.

**2.** Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(A)(E) and (O). This Memorandum of Decision constitutes conclusions of law under F.R.Civ.P. 52 as made applicable by F.R.Bkrtcy.P. 7052.

**3.** There is no need to prove the existence of a creditor with an allowable claim because BCL § 720(b) expressly authorizes the trustee in bankruptcy to bring the action. *Nofziger, supra,* 88 B.R. at 622, 623. A trustee is not bound to the rights of creditors by the state law statute but is given standing in its own right. *Denlinger, supra,* 121 B.R. at 292–293.

**4.** Other theories, initially advanced against Richard Biaggi to recover the value of the shares of stock he sold, were abandoned when his convictions on fraud and bribery were reversed by the Court of Appeals.

Wedtech[5] has moved for summary judgment alleging that there are no material facts in dispute, because Richard Biaggi is collaterally estopped from relitigating the relevant facts that have already been determined in the antecedent criminal action, and therefore, Wedtech is entitled to judgment as a matter of law.[6]

### BCL § 720

■ BCL § 720 provides in pertinent part:

> (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:
>
> . . . .
>
> (2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

Richard Biaggi argues that because he was neither an officer nor director of Wedtech, BCL § 720 is not applicable to the facts of this case.

By its terms, BCL § 720 empowers a bankruptcy trustee to bring an action against corporate officers and directors. Courts have interpreted the section to impose liability on a wider range of targets because BCL § 720(a)(2) provides that an element of relief for which a proponent may bring an action is to "set aside . . . an unlawful . . . transfer of corporate assets." BCL § 720; *Denlinger, supra,* 121 B.R. at 291–292; *Nofziger, supra,* 88 B.R. at 624. The Court of Appeals for the Second Circuit, in *Podell & Podell v. Feldman (In re Leasing Consultants),* 592 F.2d 103, 109 (2d Cir.1979), noted that New York Courts have held that the predecessor section to BCL § 720 imposed liability on "the actual recipient of money wrongfully withdrawn from the corporation." *Id.* at 109, *citing,*

*Singer v. State Laundry Inc.,* 188 Misc. 583, 586–587, 68 N.Y.S.2d 808, 812 (Sup.Ct.N.Y.County 1947). Basing its decision on the interpretation by New York Courts of § 60 of General Corporation Law, the predecessor section to BCL § 720, the District Court for the Southern District of New York found in *Atlanta Shipping Corp. v. Chemical Bank,* 631 F.Supp. 335 (S.D.N.Y.1986), aff'd, 818 F.2d 240 (2d Cir. 1987), that BCL § 720 authorizes a claim against a knowing transferee of unlawfully conveyed corporate assets. *Id.* at 350. To sustain the claim, it is not necessary to join an officer or director as a party. *Denlinger, supra,* 121 B.R. at 291–292. Therefore, § 720 has been construed liberally "to allow claims for relief solely against the transferees." *Nofziger, supra,* 88 B.R. at 624.

### Collateral Estoppel

■ BCL § 720 requires that the transferee have knowledge of the unlawfulness of the transfer of the corporate assets. Wedtech contends that Richard Biaggi is collaterally estopped from denying his knowledge of the unlawfulness of the transfer based upon his conviction for the tax offenses in the antecedent criminal action, and that the criminal proceeding establishes that Richard Biaggi held the stock as Mario Biaggi's nominee.

Richard Biaggi contends that his prior conviction does not have any collateral estoppel effect because there is no way to determine the basis of the jury's verdict.

Although this Court believes that Richard Biaggi is collaterally estopped from denying that he held at least a portion of the stock as Mario Biaggi's nominee, we find that the knowledge of this fact does not provide the element of knowledge required by BCL § 720.

---

5. The summary judgment motion was made by the Wedtech Liquidating Trust, as a successor to Wedtech Corp. For convenience we refer to both Wedtech Corp. and the Wedtech Liquidating Trust as "Wedtech".

6. After Mario Biaggi's convictions were affirmed by the Court of Appeals, summary judgment was also sought against him in this adversary proceeding. In addition to relying on B.C.L. § 720, and a theory of unjust enrichment,

Wedtech claimed that collateral estoppel precluded Mario Biaggi from denying that he engaged in racketeering activity and had extorted the 225,000 shares of Wedtech stock.

On 3/1/91, at the hearing on the motion for summary judgment, summary judgment was granted against Mario Biaggi in the amount of $3,600,000, predicated on his conviction in the antecedent criminal action.

■ Where a judgment is issued in an action in which a party has been given an opportunity to litigate an issue necessary to the outcome of that action, collateral estoppel precludes the party from relitigating that issue in a subsequent action based upon a different cause of action.

Specifically, Wedtech seeks to apply the "offensive use of collateral estoppel" to estop the "defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

The Supreme Court's decision in *Parklane* demonstrates that mutuality of parties is not required.[7]  *Bernstein v. IDT Corp.*, 638 F.Supp. 916, 918 n. 3 (S.D.N.Y. 1986) (Although not a party to an antecedent criminal proceeding, a bankruptcy trustee "may assert a 'non-mutual' estoppel.")

The *Parklane* Court noted that the trial court is given broad discretion to determine when collateral estoppel should apply. *Parklane, supra*, 439 U.S. at 331, 99 S.Ct. at 651. It set forth factors that should guide a trial court in its determination of whether collateral estoppel should apply, and found that where a party could have easily joined in the earlier action but chose not to join, it would be unfair to apply collateral estoppel in that party's favor. *Parklane, supra*, 439 U.S. at 330–331, 99 S.Ct. at 651–52. In the case *sub judice*, the trustee could not have joined in the earlier criminal action. Additional factors considered include the defendant's incentive to defend in the earlier action, whether the judgment in the earlier action was inconsistent with previous judgments in other actions against the defendant, and whether the previous action did not afford the defendant procedural advantages that are available in the later action. *Parklane, supra*, 439 U.S. at 330–331, 99 S.Ct. at 651–52. Considering the serious nature of the charges against Richard Biaggi, he had every incentive to vigorously defend in the antecedent criminal action, which he did as evidenced by the appeal to the Second Circuit Court of Appeals. Further, this Court has not been directed to any evidence of previous inconsistent judgments or of procedural advantages available in this action that were unavailable in the prior action that would effect a different result.

■ As noted, to apply collateral estoppel and preclude a party from relitigating an issue, it must be shown that the finding on that issue was necessary to the outcome in the prior action. In the context of a criminal conviction based on a guilty verdict, an issue is regarded as having been determined by the judgment if the issue was "essential to the verdict." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534 (1951).[8]

Richard Biaggi states that because he was only convicted of the tax charges, the jury's reasoning is unclear. He contends that the conviction on the tax charges could have been based on any reason, including a determination that Richard Biaggi over-

---

**7.** In *Parklane,* the Court allowed the plaintiff in a civil action to use offensive collateral estoppel to preclude the defendants from relitigating the issue of whether a proxy statement was materially false and misleading. The Court based its decision upon the fact that the defendants in that action had been given a "full and fair" opportunity to litigate that issue in an antecedent action brought by the SEC. *Parklane, supra*, 439 U.S. at 332–333, 99 S.Ct. at 652–53.

**8.** *Emich* concerned an antitrust statute (Section 5 of the Clayton Act) that made available, as *prima facie* evidence, to a litigant in a private civil action a final judgment or decree in favor of the government in an antecedent criminal action.

The *Emich* case was decided when mutuality of parties was still a requirement for the use of collateral estoppel. Therefore the Court was constrained to the use of the statute to afford the "new" party in the *Emich* private action the benefit of the prior judgment obtained by the government.

Although the Court in *Emich* was determining the evidentiary use that could be made of the prior conviction under the antitrust statute applicable in that case, the Court stated that it made the determination "by reference to the general doctrine of estoppel." *Emich, supra*, 340 U.S. at 568, 71 S.Ct. at 414.

stated the salary from his law firm. Richard Biaggi argues that Wedtech's reliance on the decision of the Second Circuit Court of Appeals, which affirmed the jury's conviction on the tax offenses, is misplaced because the Court of Appeals' statements were merely speculation by the Court as to the reasons for the jury's verdict. This view misunderstands the scope of review afforded this Court in determining what issues were decided in the prior criminal action.

The Supreme Court in *Emich* recognized the difficulty of determining what matters were adjudicated in the prior suit, especially where there is a general verdict not specifying the basis of the determination made by the jury. *Id.* at 569, 71 S.Ct. at 414. The Supreme Court concluded that it was the trial judge in the subsequent civil action who must determine what was decided by the prior criminal judgment. The trial judge could base his decision upon a review of the record in the prior action, including pleadings, evidence submitted to the Court, and instructions to the jury. "[A]ny opinions of the courts" was specifically mentioned as part of the record that could be examined by the trial judge in the subsequent civil suit. *Id.*

The *Emich* Court proceeded to accept the determination for the basis of the jury verdict that was set forth by the Court of Appeals in the antecedent criminal proceeding. *Id.* at 570, 71 S.Ct. at 414.

With reference to the instant action, the Court of Appeals' decision in the antecedent criminal proceeding noted that Richard Biaggi was convicted of filing false tax returns by overstating his income in 1983 to include receipt of the 112,500 shares of Wedtech stock, and overstating his income in 1985 to include receipt of the gain from the sale of a portion of these shares. In affirming the conviction of the tax offenses, the Court of Appeals concluded that "the evidence amply support[ed] a finding that Richard [Biaggi] held the stock as nominee for [Mario Biaggi]." *U.S. v. Biaggi*, 909 F.2d 662, 680 (2d Cir.1990).

Aside from Richard Biaggi's suggestion that the jury's verdict, with reference to the tax offenses, could have been based on any reason unknown to us, this Court's attention is not directed to any evidence submitted or any other part of the record in the antecedent criminal action that could have persuaded the jury to convict Richard Biaggi on the tax offenses. Upon the review of the Court of Appeals' decision in the antecedent criminal matter, we determine that the finding that Richard Biaggi held at least a portion of the stock as a nominee for Mario Biaggi was a necessary element to the jury's guilty verdict, with respect to the tax offenses. Therefore, Richard Biaggi is collaterally estopped from relitigating the question of whether he held at least a portion of the stock as Mario Biaggi's nominee.

### Requisite Knowledge

■ The purpose and scope of BCL § 720 concerns actions where a corporate officer or director breached a fiduciary duty to the corporation. *See, Rego Park Gardens Assoc. v. Owners, Inc.*, 174 A.D.2d 337, 570 N.Y.S.2d 550, 551, (AD. 1st Dept.1991). (If a breach of the fiduciary duty owed to a corporation by a director is established, BCL § 720 "provides [a] procedure[ ] for redress."). It is then permissible to go after the funds in the hands of a transferee. By its terms, BCL § 720 provides that the transferee must have knowledge of the unlawfulness of the transfer of the corporate assets. *Denlinger, supra*, 121 B.R. at 290 ("The face of Section 720 clearly establishes that liability cannot attach to a transferee without knowledge of unlawfulness."); *Atlanta, supra*, 631 F.Supp. at 350 (BCL § 720 authorizes an action against a "knowing transferee"). The requisite knowledge relates to the action by the corporate officer or director that gave rise to the breach of duty to the corporation.

■ The breach of duty by Wedtech's corporate officers was in their transfer of corporate assets in response to Mario Biaggi's extortion demands and to further the bribery conspiracy. To establish the knowledge requirement of BCL § 720, it would have to be demonstrated that Richard Biaggi had knowledge that the stock

was transferred in response to Mario Biaggi's extortion demands or to influence Mario Biaggi in the performance of his position. In the prior criminal action against Richard Biaggi, not enough evidence was presented to establish that Richard Biaggi had knowledge that the stocks were issued as a payment to influence Mario Biaggi to use the power of his position to secure DOD contracts for Wedtech. *U.S. v. Biaggi, supra,* 909 F.2d at 680. It was established that Richard Biaggi had knowledge of the fact that he was holding at least a portion of the stock as Mario Biaggi's nominee. This established that Richard Biaggi had knowledge of a course of action that violated an obligation that Mario Biaggi had to the taxing authorities. It also established knowledge of a course of action that breached a duty owed by Mario Biaggi, as a member of the House of Representatives, to the government to comply with the regulation setting a cap on outside earnings. It does not, however, establish that Richard Biaggi had knowledge of the action that breached the duty owed to the corporation by the officers and directors.

Wedtech may also not rely on *Leasing* or *Nofziger.* In *Leasing,* Bertram Podell, a member of Congress, pleaded guilty to conspiracy to defraud the government and to violation of a conflict of interest statute by accepting compensation to advocate the interest of a subsidiary of Leasing Corporation before various governmental agencies. The bankruptcy trustee for Leasing Corporation brought an action under BCL § 720 to recover the payments. Without discussion of Podell's knowledge of the illegality of the transfer, the Second Circuit Court of Appeals found that the transfer was voidable because payments made to further a conspiracy are not for proper corporate purposes. *Leasing, supra,* 592 F.2d at 109–110. In *Nofziger,* payments of cash and stock were made under a contract that contemplated lobbying activity that was subsequently determined to be illegal because it violated the Federal Ethics in Government Act. The payments were found to be voidable and recoverable under BCL § 720, *Nofziger, supra,* 88 B.R. at 624–626. The Court in *Nofziger* stated that based upon its decision and the deci-

sion rendered in *Leasing,* it would "appear[ ] that section 720(a)(2) is to be interpreted to require pleading and proof of a mere transferee's knowledge of illegality, but not where the transferee is one who participates in an illegal transaction and is paid for the service." *Id.* at 626. The *Nofziger* Court subsequently stated in *Denlinger* that the knowledge requirement was satisfied in *Nofziger* and *Leasing* because of the prior criminal convictions of the defendants in those actions. *Denlinger, supra,* 121 B.R. at 290. "(A) conviction could support an inference that [the defendant] was a criminal participant in the allegedly unlawful conveyance, thereby taking [the defendant] out of the zone of interests to be protected by Section 720's knowledge requirement." *Id.* at 290–291.

In *Leasing* and *Nofziger,* BCL § 720's knowledge requirement was satisfied by the prior criminal convictions of the defendants as a result of the unlawful transfer. Richard Biaggi's conviction was not based upon his acceptance of the transfer, but, rather, it was based upon the inaccurate reporting in his tax returns of the stock and its proceeds that he held as a nominee.

Nor may Wedtech rely on the statement in *Nofziger* that the "broad cast of the court's language in [*Leasing* ] [ ] subjects a transferee who participated in illegal activity to return the property regardless of knowledge of illegality." *Nofziger, supra,* 88 B.R. at 625. In *Leasing* and *Nofziger,* when the corporate assets were transferred to the recipients, they may not have had knowledge of the unlawfulness of the transfer, but they did have knowledge of the purpose for which the assets were paid. In *Leasing,* Podell knew that the money was paid to his law firm for his services in representing the interests of a subsidiary of Leasing Consultant, Inc. before various governmental agencies. Nofziger knew that the corporate assets transferred to his firm were for his lobbying activity in behalf of Wedtech. Their acceptances of these transfers formed the basis of the criminal convictions upon which the trustee relied in bringing the BCL § 720 actions. By contrast, although Richard Biaggi knew that at least a portion of the stock was transferred to him as Mario Biaggi's nomi-

nee, it has not been established that Richard Biaggi knew that the stock was transferred in response to Mario Biaggi's extortion demands or for the purpose of influencing Mario Biaggi in the performance of his position as a member of Congress. "The false tax return counts require knowledge only of the true ownership of the shares, not of the unlawful purpose for which they were issued." *U.S. v. Biaggi, supra,* 909 F.2d at 681.

Under F.R.Civ.P. 56(c), incorporated into bankruptcy procedure by F.R.Bkrtcy.P. 7056, summary judgment may only be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). A determination of whether Richard Biaggi had knowledge of the unlawfulness of the transfer of the corporate assets is a material fact necessary to be established prior to a finding that Richard Biaggi is liable under BCL § 720 as a transferee of wrongfully diverted corporate assets. We conclude that Richard Biaggi's prior criminal conviction on the tax charges may not be used to establish either Richard Biaggi's knowledge of the breach of duty by Wedtech's corporate officers or the unlawfulness of the transfer. Accordingly, the motion for summary judgment based upon BCL § 720 will be denied.

### Unjust Enrichment

Wedtech's unjust enrichment claim is also based upon the collateral estoppel effect of the prior criminal action. While it was necessary for the conviction on the tax offenses to establish that Richard Biaggi held at least a portion of the stock as Mario Biaggi's nominee, it was not essential to the jury's determination to find that Richard Biaggi held the entire amount as a nominee. Indeed, in the antecedent criminal action, the Second Circuit Court of Appeals, in commenting on the evidence supporting Richard Biaggi's status as a nominee, stated that he could not possibly claim that he was entitled to the 112,500 shares as a member of the law firm because, when the stock was issued, he had only been a lawyer a few months and "he did little work on the Wedtech account." *U.S. v. Biaggi, supra,* 909 F.2d at 680.

The fact that he did a little work on the account leaves open the possibility that he was entitled to some of the stock in his own right. A hearing must be held to allow the trier of fact to determine what, if any, portion of the stock Richard Biaggi held in his own right. Thus, we choose not to grant summary judgment.

### Conclusion

The doctrine of collateral estoppel precludes Richard Biaggi from denying he held at least a portion of the 112,500 shares of Wedtech stock as Mario Biaggi's nominee. It does not, however, establish that he held all of the stock as a nominee.

Richard Biaggi's knowledge of the fact that he held part of the stock as a nominee does not provide the element of knowledge required to find Richard Biaggi liable as a transferee who knew of the unlawfulness of the transfer under BCL § 720.

Inasmuch as it is necessary to hold an evidentiary hearing to determine what, if any, portion of the Wedtech stock was held by Richard Biaggi in his own right, we do not reach the merits of the unjust enrichment claim.

Counsel for Richard Biaggi is to settle an order consistent with this Memorandum of Decision.