OPINION OF THE COURT
Martin B. Stecher, J.
Plaintiff moves for summary judgment on its complaint (CPLR 3212). Defendants cross-move for summary judgment dismissing the complaint (CPLR 3212). The action is to recoup a portion of sums paid in settlement of an action brought against the third-party defendant, plaintiff’s assured and now subrogor.
On March 1, 1971, the third-party defendant, John Reilly, and the two corporate defendants entered into a joint venture agreement to acquire the yacht Kinsale. In the agreement prepared by Reilly, an attorney, Reilly was designated as the "Agent” for the joint venture and as its nominee to hold title to the yacht in his sole name. It was anticipated that Reilly would direct the affairs of the joint venture which was essentially the use of this sailing vessel for the pleasure of the various parties, and it was agreed that the expenses of the venture would be shared by the three joint venturers, each of whom contributed an equal sum to the purchase of the yacht and each of whom had an undivided one-third interest in the yacht.
Paragraph 3 provided: "Expenses of Venture. All disbursements incurred by the Agent in acquiring, holding and caring for the yacht shall be paid by the Joint Venturers” in equal proportions on demand.
Reilly took title soon thereafter. He obtained marine liability insurance from Atlantic Mutual Insurance Company with limits of $100,000 for casualty and for hull insurance as well. At the time of the incident which gave rise to this lawsuit, Reilly had other personal insurance issued to him by the plaintiff, North River Insurance Company. The policy was entitled "Comprehensive Catastrophe Liability Policy” with a limit of $1 million. It was the familiar "umbrella” type of policy providing among other things for coverage of claims in excess of a required underlying automobile liability insurance policy with limits of at least $100,000; and providing for water craft liability in excess of a required underlying policy of $100,000. We are not informed when Reilly first obtained such insurance but we do know that the policy period covering this incident was July 11, 1973 to July 11, 1975. The joint venture policy meshed nicely with his personal umbrella policy.
*482 On November 20, 1974, when the vessel was in drydock at Norfolk, Virginia, and none of the principals was on board, Barbara Cierkosz, a crew member, fell from the yacht sustaining severe personal injuries. On or about November 9, 1975, she brought what appears to have been a Jones Act (46 USC, Appendix § 688) action against Reilly alone in the United States District Court for the Southern District of New York. From the papers before me, it appears that Reilly’s insurers made several unsuccessful efforts to join his coventurers as parties in that lawsuit. In any event, on May 23, 1978, the action was settled by payment to Cierkosz of $400,000 of which $326,308.37 was contributed by the plaintiff, Reilly’s umbrella insurer.
By the terms of the Cierkosz stipulation of settlement, Reilly expressly reserved his right to seek contribution or indemnification against his coventurers and their principals. The release which Reilly obtained from Ms. Cierkosz was not only to Reilly but to the joint venturers and their principals as well.
On or about February 13, 1975, subsequent to the accident but prior to the suit, Reilly purchased the interest in the yacht owned by defendants, Spain Oil Corporation and Turk Hill Realty, Inc.
In or about January 1979, the plaintiff, as subrogee of Reilly, brought this action seeking reimbursement from Reilly’s two coventurers pro rata to the respective interests in the yacht which they had at the time that Ms. Cierkosz’s cause of action arose.
The defendants contend that as there is no subrogation provision in the umbrella insurance contract, and no other subrogation contract or assignment of Reilly’s interests to North River, that North River is without standing to sue. This contention is without merit. Subrogation exists not only by assignment or express contract but by operation of law (Hartford Acc. & Indem. Co. v CNA Ins. Cos., 99 AD2d 310, 312). By paying Reilly’s obligation to Cierkosz, the plaintiff succeeded to whatever rights Reilly would have had, had he made the payment.
The defendants contend that as the joint venture was "dissolved” it was ineffectual to bind them. This argument, too, must fail. A joint venture has the characteristics of a partnership and many of its legal consequences (Meinhard v Salmon, 249 NY 458, 462; Friedman v Gettner, 6 AD2d 647, 648, affd 7 NY2d 764; see, 16 NY Jur 2d, Business Relationships, § 1578).
*483 It has been said that a joint venture is a partnership for a limited time and purpose (Matter of Great Lakes-Dunbar-Rochester v State Tax Commn., 102 AD2d 1, 4, revd on other grounds 65 NY2d 339). A partnership or a joint venture terminates with the withdrawal of any joint venturer or partner, or on the parties’ agreement to terminate the venture. It is undoubted that the joint venture terminated when Reilly purchased his coventurers’ interests in the yacht. Such termination, however, is not a termination of liability to each other previously incurred. That can only occur among partners and joint venturers upon an accounting or release (BenDashan v Plitt, 58 AD2d 244). The termination which occurs on withdrawal or agreement is a prospective termination, that is, the partnership or joint venture no longer engages in any new undertakings. A partnership or joint venture, however, continues to exist for the purpose of winding up claims and obligations (Partnership Law § 61; 16 NY Jur 2d, Business Relationships, § 1602; Matter of Silverberg [Schwartz], 81 AD2d 640).
Thus, if the obligation to Cierkosz was a joint venture obligation and one of the joint venturers, in this case Reilly, paid more than his share of the obligation, in the absence of a statute preventing recovery, he is entitled to be indemnified for his excess payment (see, Schuler v Birnbaum, 62 AD2d 461).
It is the contention of the defendants that section 15-108 (c) of the General Obligations Law is such a statute. It provides, in substance, that when a joint tort-feasor, prior to judgment, purchases his peace by settling with the plaintiff, he may not thereafter seek "contribution from any other person” (emphasis supplied). Irrespective of the name which the attorneys for the plaintiff subrogee attach to the causes of action in their pleading (cf., Brick v Cohn-Hall-Marx Co., 276 NY 259, 264), the question here turns in part on whether this is an action for the "contribution” (CPLR 1401) or for “indemnity or subrogation” (CPLR 1404 [b]). Is this an action in which one party seeks to obtain from another, by virtue of the latter’s own wrongdoing, a "ratable” share of the loss sustained (see, McFall v Compaignie Mar. Belge [Lloyd Royal], 304 NY 314); or is it one which seeks to shift responsibility by virtue of the parties’ contract or relationship to each other (Riviello v Waldron, 47 NY2d 297; Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34; McFall v Compaignie Mar. Belge [Lloyd Royal], supra). Where the result sought is indemnifica *484 tian, that is, the shifting of responsibility, not by virtue of alleged wrongdoing of a defendant but by reason of his contractual or other relationship to the plaintiff or the plaintiff’s assignor, the provisions of section 15-108 (c) of the General Obligations Law are inapplicable (Rosado v Proctor & Schwartz, 66 NY2d 21).
There is some hint in these papers that Reilly, although not present at the time of Ms. Cierkosz’s injury, may have been personally at fault in that the cause of the accident was the manner in which the anchor and the anchor line were maintained on the deck of the ship. But whether or not Reilly had some personal involvement as a tort-feasor leading to Ms. Cierkosz’s injury is irrelevant to our discussion; for the issue is not whether Reilly was a tort-feasor but whether the people from whom the plaintiff seeks payment were joint tort-feasors with Reilly. If the asserted liability on the part of the defendants does not arise out of some claimed wrongdoing on their part, then they are not joint tort-feasors and an action against them is not barred by the provisions of section 15-108 (c) of the General Obligations Law (Riviello v Waldron, supra). There is nothing in these papers from which an inference of "culpability” (see, CPLR art 14) can be drawn. In short, the defendants, not accused of being or claiming to have been joint tort-feasors, they may not seek refuge in subdivision (c) of section 15-108 of the General Obligations Law.
It may be argued that this is not an action for indemnity, for indemnity is defined in the cases as arising out of the contractual or other relationship of the parties involving "a complete shifting of the loss” (Riviello v Waldron, supra, at 306; Rock v Reed-Prentice Div. of Package Mach. Co., supra; McFall v Compaignie Mar. Belge [Lloyd Royal], supra; County of Westchester v Becket Assocs., 102 AD2d 34; Smith v Hooker Chem. & Plastics Corp., 83 AD2d 199). Obviously, no effort has been made by North River to shift the entire loss to the defendants. What is sought is a sharing of the loss among the three joint venturers. The liability or loss sought to be shared here does not arise out of a convergence of wrongdoing but rather out of the relationship of the parties to each other as coventurers.
The plaintiff, in support of its claim, appears to rely on paragraph 3 of the joint venture agreement which requires that "all disbursements” of the venture be paid by the joint venturers in proportion to their respective interests in the yacht. The defendants, with some justification, suggest that *485 the intent of language such as "expenses of venture” or "disbursements”, does not refer to extraordinary expenditures such as a payment which is 16 times the value of the ship but rather ordinary maintenance and everyday cost of operation. The decision, however, need not turn upon the intent of the parties in using such language; the law requires that partners and joint venturers share in the losses of the venture (Partnership Law § 40; Schuler v Birnbaum, supra), unless there is an express agreement to the contrary. Indeed, the very nature of a partnership or joint venture is an undertaking to share the profits or losses of the enterprise. It is from this relationship that the rights of North River, if any, arises.
Nor is it significant that the joint venture "terminated” prior to the institution and settlement of the Cierkosz lawsuit. As indicated above, even after termination, a partnership or joint venture continues for the purpose of collecting, liquidating and distributing its assets and for the purpose of winding up claims against it (Partnership Law § 61; Toeg v Margolies, 280 App Div 319, appeals dismissed 305 NY 568).
The fact that the defendants were not parties to the Cierkosz suit is not relevant to our inquiry. True, had the Cierkosz case gone to trial any judgment against Reilly would not have been enforceable as a judgment against his coventurers for the simple reason they were not parties to the suit. But in no way does this conclusion militate against the right of a venturer to seek contribution from his coventurers for losses sustained in the venture.
The defendants raise other defenses, all of which are devoid of merit. For instance, it is claimed that Reilly who prepared the agreement and is an attorney did not protect the defendants’ interests adequately. Nowhere do the defendants suggest that Reilly stood in the relationship to the defendants of attorney to clients nor does it appear that even if Reilly had been the defendants’ attorney that there was any malpractice in the preparation of the agreement.
The defendants contend that they were not informed of the settlement and were given no opportunity to ratify it. This, as well as the reasonableness of the settlement, is a question of fact which entitles no one to judgment on these papers (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395).
From the foregoing, it is clear that the defendants’ cross motion for summary judgment must be denied; but the plaintiff’s motion for summary judgment must likewise be denied. *486 Although the defendants may not seek to recover from plaintiff subrogee by way of counterclaim for any claims they may have against Reilly (Allstate Ins. Co. v Babylon Chrysler, Plymouth, 45 AD2d 969), they are entitled to defend by way of setoff for claims which they have against Reilly, particularly which grew out of the same transaction, namely, this joint venture. (Allstate Ins. Co. v Babylon Chrysler, Plymouth, supra.) There is a claim here that Reilly, as agent and, indeed, managing venturer of the venture was under a duty to obtain adequate insurance for all of the venturers. That the insurance was inadequate is obvious. Beyond that, it is apparent that he insured himself but not his coventurers for the excess which proved to be so necessary in this case. The claims therefore for breach of trust (protecting himself and not his coventurers at a time when he was in charge of the venture) and negligence (obtaining merely $100,000 of coverage) are issues to which the plaintiff subrogee will have to respond.
As indicated above, both motions for summary judgment are denied.