OPINION OF THE COURT
Kaye, J.
Where one joint venturer, managing the business of the joint venture, alone commits an intentional fraud against third parties resulting in the recovery of damages by them, he is not thereafter entitled to be indemnified by the other joint venturer.
This appeal — involving solely the allocation of damages between coventurers inter se — arises out of the conversion of a Manhattan building from commercial lofts to a residential cooperative. In early 1978, Paul Dumont (plaintiff) and Anthony Russo (defendant) entered into an oral agreement to sponsor conversion of the building. Russo, a hairdresser by trade, was not expected to take an active role, but only to provide the cash then needed to buy the building. Dumont, who had experience in cooperative conversions, was to contribute his expertise and do the actual work required to form a cooperative corporation and convey the building to it. The two agreed that after the conveyance was complete, Russo would receive the proprietary lease for the eighth floor of the building as well as half the net proceeds.
In 1979, a cooperative corporation known as Gramercy Equities Corporation was formed and acquired title to the property. Dumont, sponsor of the plan, began selling shares in the cooperative; Russo took no part in this activity. Dumont ultimately sold all other floors but two which he retained — the ground floor (intended for a commercial tenant) and the sixth floor. It was understood that proprietary leaseholders, including Dumont, each would renovate their own "raw” space, so that the apartments could meet New York City Building Code *563 requirements. Until those renovations and certain other repairs were complete, no certificate of occupancy could be obtained for the building. Dumont represented to the purchasers that the cooperative corporation would undertake to secure a tax abatement pursuant to "J-51” of the Administrative Code of the City of New York.
After a number of floors had been sold, Russo brought suit against Dumont, alleging in essence that he had failed to accord him his rights as a joint venturer, and demanding that Dumont account to him for the profits of the joint venture. Dumont denied the existence of any joint venture, and claimed that Russo was a mere subscriber to the offering plan. In August 1981, judgment was rendered declaring Russo a joint venturer with Dumont in the cooperative conversion and therefore entitled to half the profits. The court found, moreover, that Russo was not expected to take an active role in the business, but only to contribute the cash required to take title to the building. Supreme Court ordered that the moneys received by Dumont from the sale of shares be held in trust, and that an accounting be rendered.
Meanwhile, trouble brewed between Dumont and the other cooperative tenants. In order to qualify for the "J-51” tax abatement, a certificate of occupancy for the building had to be issued no later than September 30, 1981; all renovations required to bring the building up to code standards had to be completed before that date. While work was well underway on other floors, Dumont had repaired none of the violations on the sixth floor, owned by Dumont but at the time occupied by a tenant-in-possession. Ultimately, the September deadline passed without a certificate of occupancy, and the cooperative failed to qualify for a "J-51” tax abatement.
The tenants sought damages against Dumont for loss of the tax abatement, alleging that he had breached his contract as proprietary leaseholder to complete his renovations in a timely fashion so that the building could qualify for the tax benefit. Additionally, they separately charged Dumont with fraud, contending that although he had promised to complete certain renovations in time to obtain the tax abatement, he never had any intention of doing so. Dumont in turn served a third-party complaint on Russo, alleging that if he were found liable to the tenants, Russo, as joint venturer, had to indemnify him for half the damages, as they arose directly out of the business of the joint venture.
*564 Dumont and Russo agreed that, as between themselves, there were no facts in dispute — only the legal consequences of their relationship. Dumont’s indemnification claim was therefore severed from the main action, to be later decided by the trial court.
At trial, the tenants’ evidence of damages consisted of the testimony of their tax attorney as to the amount of the rebate they would have received had Dumont timely completed his renovation. At the conclusion of the evidence, a large portion of the court’s instruction was devoted to the fraud charge, which was thereafter reread at the jury’s request. The jury found Dumont guilty of both breach of contract and intentional fraud — specifically answering in the affirmative the question, "Did the Defendant Paul Dumont commit a fraud against the plaintiffs?” The court awarded damages to the cooperative tenant plaintiffs in the amount lost as a result of their failure to obtain the "J-51” tax abatement, and then allowed Dumont indemnification for half that judgment against Russo, based upon its interpretation of partnership law principles.
While the jury found that Dumont had defrauded the tenants by making a promise with no intention of fulfilling it, the court made no finding that Russo in any sense participated in that wrongdoing or that Dumont’s fraud profited the joint venture. Noting that the earlier action had determined both that Russo was a joint venturer and that he was not intended to take an active role, Supreme Court simply rejected Russo’s claim that his exclusion from management foreclosed Dumont’s right of indemnification arising out of his unilateral management of the joint venture. Based upon its finding that the damages were liabilities incurred in the ordinary conduct of the joint venture, Supreme Court held that, pursuant to Partnership Law § 40 (2), Dumont was entitled to be indemnified, and the Appellate Division affirmed, without opinion. We now reverse.
Before reaching the merits of the dispute, we note Russo’s procedural argument: that resolution of the indemnification claim must await a final accounting at the end of the joint venture. Russo might well have succeeded in this argument had he raised it earlier, for courts are generally loath to intercede in squabbles between partners that result in piecemeal adjudications, preferring that partners either settle their own differences amicably or dissolve and finally conclude their *565 affairs by a full accounting (see, Lord v Hull, 178 NY 9, 13; Schuler v Birnbaum, 62 AD2d 461, 463 [Simons, J.]). The impediment to our consideration of Russo’s procedural claim, however, is that he did not present it to the trial court, but defended against Dumont’s third-party complaint solely on the merits. In that both partners in this entity have chosen to submit the indemnification claim for resolution in this fashion, we do not determine whether the dispute would otherwise fall within the general proscription against piecemeal litigation of partnership matters, or within some exception to it (see, Schuler v Birnbaum, supra).
A joint venture is a " 'special combination of two or more persons where in some specific venture a profit is jointly sought’ ” (Forman v Lumm, 214 App Div 579, 583). It is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership (see, Pedersen v Manitowoc Co., 25 NY2d 412, 419). Thus, the trial court properly looked to partnership law principles to resolve the dispute between Dumont and Russo.
In New York, the right of a partner to be indemnified for personal liabilities is governed by Partnership Law § 40 (2) (Uniform Partnership Act § 18), which provides that "[t]he partnership[*] must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property.” The question before us, simply put, is whether acts that have been determined to constitute the intentional fraud of only one of the coventurers — not shared by the other — may be considered to constitute "the ordinary and proper conduct” of the partnership business.
It is undisputed that the cooperative tenants could have brought suit for Dumont’s fraud against the joint venture, or even against Russo individually, and recovered their damages. As agents for each other, partners and joint venturers are jointly and severally liable to third parties for "any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership”. (Partnership Law §§ 24, 26 *566 [1]; see also, Royal Bank & Trust Co. v Weintraub, Gold & Alper, 68 NY2d 124; Pedersen v Manitowoc Co., supra.) The sale of cooperative shares, during which Dumont made the fraudulent statements to purchasers, constituted the "ordinary” course of the business of this joint venture: it was formed for the very purpose of selling cooperative shares in the building. However, the tenants sued only Dumont, and the issue is whether as between the two joint venturers Dumont can shift a portion of the liability that has been imposed on him to his joint venturer, Russo. The fact that a charge may have been incurred in the ordinary course of partnership business — as the trial court found here — does not conclude the inquiry as to whether indemnification is necessarily recoverable. Partnership Law § 40 (2) contemplates something more.
The principle that a partnership must indemnify a partner who has incurred liabilities in the ordinary course of the partnership business is not determinative where the liability is the result of unauthorized, intentional wrongdoing. Although the public interest requires that the partnership or even innocent partners be held answerable to third parties for unlawful actions of their agents apparently taken on their behalf (see, Royal Bank & Trust Co. v Weintraub, Gold & Alper, supra, at 128-129; Kittredge v Langley, 252 NY 405, 419), there is no comparable interest in imposing liability on innocent partners when the suit is between the partners themselves (see, Reuschlein & Gregory, Agency and Partnership § 185 [1979]; Lindley, Partnership, at 460 [10th ed 1935]; Restatement [Second] of Agency § 440 [a]). Indeed, this distinction is codified in the Partnership Law, which imposes partnership liability for injury to third persons caused by "any wrongful act or omission of any partner acting in the ordinary course of the business” (Partnership Law § 24), but requires indemnification only for liabilities incurred in "the ordinary and proper conduct” of the partnership business (Partnership Law § 40 [2] [emphasis added]).
In matters of indemnification between two joint venturers, the unauthorized fraud found to have been practiced against third persons by only one venturer obviously is not the "proper conduct” of the partnership business. That Dumont was vested with sole managerial control of the business does not alter that result in the absence of a finding that Russo in any way shared in Dumont’s fraud. Partnership Law § 40 is expressly "subject to any agreement” between partners (see, Kraemer v Gallagher, 18 AD2d 676), but without any finding *567 of complicity, the unauthorized fraud of one venturer cannot be said to be pursuant to the "agreement” of both.
Finally, we note that this result comports with the public policy of discouraging intentionally wrongful conduct. To permit a joint venturer to shift a portion of the liability for independent fraud to a partner not found to have had any complicity in it significantly diminishes the incentive to refrain from such conduct (see, Rosado v Proctor & Schwartz, 66 NY2d 21, 26-27). Such a policy has particular force in the case of joint venturers who — apart from their responsibilities to third persons — owe each other a duty of "finest loyalty” and honesty. (Meinhard v Salmon, 249 NY 458, 463-464.)
Accordingly, the Appellate Division order should be reversed, with costs, and the third-party complaint dismissed.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 While Partnership Law § 40 (2) speaks of indemnification by the entity, given the nature of this venture the claim has been asserted and defended individually — Dumont’s claim has been brought against Russo personally and Russo has defended personally.