**ESI, INC., Plaintiff,**

v.

**COASTAL POWER PRODUCTION COMPANY a/k/a Coastal Power Company, La Casa Castro, S.A. de C.V. and Latin American Energy Development, Inc. d/b/a Desarrollos Energeticos Latino Americanos, S.A., Defendants.**

**No. 96 CIV. 7381(WCC).**

United States District Court,
S.D. New York.

July 8, 1998.

Aydelott & Aydelott, Mount Kisco, NY (Christopher P. Keenan, of counsel), for Plaintiff.

Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL (Pedro J. Martinez–Fraga, of counsel), Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York City (Jeffrey B. Sklaroff, of counsel), for Defendants Coastal Power Company and La Casa Castro, S.A. de C.V.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This diversity action arises out of a dispute as to the parties' relative ownership interests in an electrical generating power plant located in El Salvador. Presently before the Court is a Rule 12(b)(6) motion to dismiss brought by defendant La Casa Castro, S.A. de C.V. ("La Casa Castro"). La Casa Castro seeks dismissal of the Sixth Claim (for breach of fiduciary duty) and the Tenth

Claim (for tortious interference with contractual relations) of the Amended Complaint. Plaintiff ESI, Inc. ("ESI") cross-moves for leave to amend the Amended Complaint in the event that the tortious interference claim is dismissed. For the reasons discussed below, La Casa Castro's motion is denied, and ESI's cross-motion is denied as moot.

## BACKGROUND

This Court has already set out the complex factual background of this case in *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419 (S.D.N.Y.1998) (hereinafter "*ESI I* "), which involved a motion to dismiss brought by defendant Coastal Power Production Co. ("Coastal"). For purposes of the instant motion, the Court assumes familiarity with that opinion and hereby incorporates its factual discussion.

## DISCUSSION

When faced with a Rule 12(b)(6) motion to dismiss, "a court's task in determining the sufficiency of a complaint is 'necessarily a limited one.'" *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The issue is not whether a plaintiff will or might ultimately prevail on its claim, but whether it is entitled to offer evidence in support of the allegations in the complaint. *Id.* Dismissal is warranted under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts, consistent with its complaint, in support of its claim that would entitle it to relief. *See id.* at 62–63 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on such a motion, the Court must accept as true all factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Id.* at 63 (citing *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)).

However, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Sazerac Co. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y.1994) (citing *Feick v. Fleener*, 653 F.2d 69, 75 & n. 4 (2d Cir. 1981)); *accord Barnum v. Millbrook Care Ltd. Partnership*, 850 F.Supp. 1227, 1232–33 (S.D.N.Y.), *aff'd*, 43 F.3d 1458 (2d Cir.1994). Moreover, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996).

### I. Sixth Claim: Breach of Fiduciary Duty

In the Sixth Claim of the Amended Complaint, ESI alleges that it shared with the defendants "a fiduciary and confidential relationship as joint venturers in the Project, under the Three–Party Agreement." (Am. Compl.¶ 108.) ESI further alleges that defendants "breached their fiduciary duties of loyalty, good faith and fair dealing toward ESI by unlawfully and intentionally excluding and ejecting ESI from the Project, by entering into secret negotiations and sharing agreements concerning the Project, and by converting ESI's 2.5% interest in the Project and the Plant's income for themselves." (*Id.* ¶ 112.)

As this Court noted in *ESI I*, a joint venture gives rise to fiduciary duties. *See Gramercy Equities Corp. v. Dumont*, 72 N.Y.2d 560, 534 N.Y.S.2d 908, 912, 531 N.E.2d 629, 633 (1988). Presently at issue is whether the language of the Three–Party Agreement belies ESI's allegation that ESI and the defendants were joint venturers.

"A joint venture is a 'special combination of two or more persons where in some specific venture a profit is jointly sought.'" *Id.* at 911, 534 N.Y.S.2d 908, 531 N.E.2d at 632 (citation omitted); *see also US Airways Group, Inc. v. British Airways PLC*, 989 F.Supp. 482, 492 (S.D.N.Y.1997) ("Under New York law, a joint venture 'has been variously defined as an association to carry out a single business enterprise for profit; a common enterprise for mutual benefit; [and] a combination of property, efforts, skills and judgment in a common undertaking.'") (citation omitted). It is not a status created by

law, but a voluntary relationship arising out of contract. *Id.* at 493; *Shore Parkway Assocs. v. United Artists Theater Circuit, Inc.,* No. 92–8252, 1993 WL 361646, at *2–3 (S.D.N.Y. Sept. 14, 1993) (citing cases).

■ To constitute a joint venture, the following five elements must be present: (1) a specific agreement between two or more parties to carry on an enterprise for profit; (2) the agreement must evidence the parties' intent to be joint venturers; (3) each party must make a contribution of property, financing, skill, knowledge, or effort; (4) each party must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. *See Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 909 F.2d 698, 701 (2d Cir.1990); *Independent Energy Corp. v. Trigen Energy Corp.,* 944 F.Supp. 1184, 1201 (S.D.N.Y.1996) (WCC); *Tilden of New Jersey, Inc. v. Regency Leasing Sys., Inc.,* 230 A.D.2d 784, 785–86, 646 N.Y.S.2d 700, 701 (2d Dep't 1996).[1]

■ La Casa Castro argues that the language of the Three–Party Agreement controverts ESI's allegation that the parties engaged in a joint venture. In particular, La Casa Castro points to Paragraph 11 of that contract (entitled "No Agency"), which states:

Nothing in this Agreement shall be construed to give any Party, and no Party shall hold itself out to have, the authority, power or right to enter into any obligation on behalf of the other Parties, any joint venture among any or all of the Parties or the Project, except as specifically authorized by the other Parties in writing. Nothing in this Agreement shall be construed to make any Party liable for the activities of any other Party, except as otherwise agreed by the Parties in writing.

La Casa Castro argues that this provision "expressly states that nothing in the agreement shall be construed to give any party to the agreement 'any joint venture among any or all of the Parties or the Project.' " (Mem. in Supp. of Mot. to Dismiss at 10.) As discussed below, this argument is without merit.

■ The primary objective in contract interpretation is to give effect to the intent of the parties as revealed by the language they chose to use. *Sayers v. Rochester Tel. Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993); *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). A motion to dismiss based on contractual language may be granted only where that language is unambiguous and conveys a definite meaning. *See Sayers,* 7 F.3d at 1094; *Seiden,* 959 F.2d at 428. "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Sayers,* 7 F.3d at 1094 (internal quotation omitted). On the other hand, "[n]o ambiguity exists when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (internal quotation omitted). Determining whether or not a writing is ambiguous is a question of law for the court. *Id.*

Although Paragraph 11 is not a model of grammatical clarity, it does not "expressly state" anything of the sort claimed by La Casa Castro. As its title would suggest, Paragraph 11 prohibits any party to the Three–Party Agreement from acting as an agent with the authority to assume any obligations on behalf of the other parties without their consent. This prohibition expressly includes entering any joint venture on behalf of the other parties without their consent. Viewed in isolation, Paragraph 11 sheds little light on whether the Three–Party Agreement

---

1. *See also Steinbeck v. Gerosa,* 4 N.Y.2d 302, 175 N.Y.S.2d 1, 13, 151 N.E.2d 170, 179 (1958) ("The ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property or interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit.").

in fact created or memorialized a joint venture relationship. Arguably, the provision could be read to reflect an understanding among the parties that no joint venture had as yet been created. It is equally plausible, however, that the provision prohibits any party from entering into any *other* joint venture on behalf of the other parties without their consent.

Other provisions of the Three–Party Agreement may belie La Casa Castro's assertion that the parties were not joint venturers. Indeed, in four different places the Three–Party Agreement expressly refers to a "joint venture." First, in a provision entitled "No Corrupt Practices," it refers to "the conduct of the business of the Project or *the joint venture.*" (Three–Party Agreement ¶ 13; emphasis added.) Second, the contract states that "no Party shall assign its rights hereunder or the right to participate in the Project or *the joint venture* without the prior written consent of the other Parties which shall not be unreasonably withheld." (*Id.* ¶ 14; emphasis added.) Third, the contract states that the parties "will not take any action adverse to the interest of the Project, *the joint venture* or NEWCO after it is formed." (*Id.* ¶ 15; emphasis added.) Finally, the contract provides that "[n]othing in this Agreement shall be construed to cause the Parties or *any joint venture referred to herein* to be a partnership for tax purposes." (*Id.* ¶ 12; emphasis added.)

Other language in the Three–Party Agreement arguably reflects the parties' intent to operate as joint venturers. The contract notes that La Casa Castro, DELASA, and a company subsequently acquired by Trigen "cooperated together ... to submit a successful bid" for the Project. (*Id.* at p. 1.) The parties also promised to "work together" to successfully consummate and execute the Power Purchase Agreement and other necessary agreements. (*Id.* ¶ 2.) The contract also suggests that the parties intended to share the profits and losses of the Project. (*See id.* ¶¶ 4, 6, 8.) In addition, the parties agreed to share all information and communications re-

garding the Project. (*See id.* ¶ 9.) Finally, the contract states that "none of the Parties will seek electrical generating projects in El Salvador except in a joint effort with the other Parties ...." (*Id.* ¶ 17.)

La Casa Castro argues that the references in the Three–Party Agreement to a "joint venture" must be viewed in conjunction with the contract's function, which La Casa Castro asserts was merely to memorialize the parties' "contemplation" with respect to the development and ownership of the Project. Viewed in this light, La Casa Castro contends, the references to a "joint venture" do not demonstrate that a joint venture then existed, but rather refer to any joint venture relationship that the parties might form in the future.[2]

Without passing judgment on the relative merits of these conflicting interpretations, the Court concludes that each is a plausible reading of the Three–Party Agreement and that the contract language on which the Sixth Claim is based is ambiguous. It is for a jury to determine whether the Three–Party Agreement was really a "contemplation" (and even if so, whether the parties in fact entered a subsequent agreement as alleged by ESI) and whether it reflected the existence of a joint venture (to which ESI was linked by the DELASA–ESI Assignment).

Given the dispute as to the import of the Three–Party Agreement, that document— with or without the inconclusive language in Paragraph 11—does not as a matter of law contradict ESI's allegation of a joint venture relationship. Therefore, the Court holds that ESI has adequately pleaded the existence of a joint venture involving La Casa Castro, and accordingly denies La Casa Castro's motion with respect to the Sixth Claim.

## II. *Tenth Claim: Tortious Interference with Contractual Relations*

In the Tenth Claim of the Amended Complaint, ESI alleges that La Casa Castro and Coastal tortiously interfered with the DELASA–ESI Assignment. More specifically, ESI

---

2. The parties' opposing interpretations of the Three–Party Agreement were discussed in *ESI I.*

*See* 995 F.Supp. at 430–31.

alleges that La Casa Castro and Coastal "procured DELASA's breach of [the DELASA–ESI Assignment] by, *inter alia,* their secret negotiations and sharing agreements, which excluded ESI and eliminated ESI's interest in the Project and the Plant's income." (Am. Compl. ¶ 133; *see also id .* ¶¶ 56–66.)

As explained in *ESI I*, the elements of a claim for tortious interference with contractual relations are (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach the contract; and (4) damages to plaintiff. *Foster v. Churchill,* 87 N.Y.2d 744, 642 N.Y.S.2d 583, 586, 665 N.E.2d 153, 156 (1996). However, a defendant cannot tortiously interfere with a contract unless it is a "third part[y] unrelated to the contract." *Solow v. Stone,* 994 F.Supp. 173, 181 (S.D.N.Y.1998) (quoting *Burdett Radiology Consultants, P.C. v. Samaritan Hosp.,* 158 A.D.2d 132, 136, 557 N.Y.S.2d 988, 991 (3d Dep't 1990)).

La Casa Castro argues that, as a matter of law, it could not have tortiously interfered with the DELASA–ESI Assignment because it was a party to that contract. La Casa Castro points out that, as the Court recognized in *ESI I*, Paragraph 14 of the Three–Party Agreement required that La Casa Castro consent to any assignment of DELASA's ownership interest. La Casa Castro contends that by consenting to the DELASA–ESI Assignment, it became a party to that contract and thus could not have tortiously interfered with it.

This argument is without merit. La Casa Castro's consent was merely a condition precedent to the valid formation of DELASA–ESI Assignment. Once La Casa Castro consented and the contract was formed, La Casa Castro had no rights or obligations under the contract. Thus, La Casa Castro did not become a party to the DELASA–ESI Assignment simply by consenting to the assignment.

The cases cited by La Casa Castro in support of its position are inapposite. Those cases—*Hall v. Burger King Corp.,* 912 F.Supp. 1509 (S.D.Fla.1995), and *Quality Inns Internat'l, Inc. v. Amberley Assocs.,* No. 88–2611, 1989 WL 71765 (D.Md. June 27, 1989)—involved claims for tortious interference with business relationships or expectancies, where the defendants had withheld consent to the plaintiffs' desired assignment of their ownership interests. In other words, those cases dealt with situations where the defendants' alleged interference either prevented plaintiffs from executing assignment contracts or detrimentally delayed the formation of such contracts.

Without passing judgment on the soundness of the courts' reasoning in *Hall* and *Quality Inns,* this Court is convinced that the allegation in the instant case—that is, that La Casa Castro interfered with an assignment contract after its formation by inducing its breach—is qualitatively different from the allegations in those cases. If a defendant has consent authority over a plaintiff's assignment, it is under no obligation to grant consent and thus no tort claim lies against it simply for withholding consent. In contrast, once a defendant has consented to an assignment, its rights cease with respect to that assignment (unless specified otherwise) and any further interference by the defendant with the assignment contract may be actionable under principles of tort law.

The Court therefore concludes that La Casa Castro is not a party to the DELASA–ESI Assignment. Instead, it is a third party unrelated to that contract and may be sued for tortiously interfering with it.[3] Accordingly, La Casa Castro's motion to dismiss is denied with respect to the Tenth Claim.

---

3. In any event, ESI correctly observes that "[e]ven if La Casa Castro is deemed a party to the [DELASA–ESI Assignment] by virtue of its written consent to same, the characterization of ESI's claim against La Casa Castro for causing a breach of the [DELASA–ESI Assignment] is only a matter of semantics." (Pl.'s Mem. in Opp. to Mot. to Dismiss at 11–12.) If La Casa Castro were deemed to be a party to the DELASA–ESI Assignment, then the allegations in the Amended Complaint would provide a basis for asserting a cause of action against La Casa Castro for breaching that contract, and there would be no reason not to allow ESI to amend the Amended Complaint accordingly.

ESI's cross-motion to amend the Amended Complaint is therefore denied as moot.

## CONCLUSION

For the reasons discussed above, La Casa Castro's motion to dismiss is denied. Accordingly, ESI's cross-motion to amend the Amended Complaint is denied as moot.

SO ORDERED.