STAHLEX–INTERHANDEL
TRUSTEE, Reg.,
Plaintiff,

v.

**WESTERN UNION FINANCIAL SERVICES EASTERN EUROPE LIMITED, formerly known as Western Union Financial Services USSR Limited, and Western Union Financial Services, Inc., Defendants.**

No. 99 Civ.2246 RWS.

United States District Court,
S.D. New York.

Aug. 19, 2003.

Lacher & Lovell–Taylor by Michael A. Lacher, Adam J. Rader, New York City, for Plaintiff.

Edwards & Angell by Andrew P. Fishkin, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Defendant Western Union Financial Services Eastern Europe Ltd. (WU–EE), formerly known as Western Union Financial Services USSR Ltd. ("WU–USSR"), has moved for partial judgment, pursuant to Fed.R.Civ.P. 56, to dismiss 1) plaintiff's claim for judgment declaring that a Consulting Agreement with WU–USSR is still in effect, and 2) plaintiff's breach of contract claim insofar as it seeks damages since December 14, 1999. Plaintiff Stahlex–Interhandel Trustee, Reg. ("Stahlex") has cross-moved against defendants for partial summary judgment pursuant to Fed.R.Civ.P. 56.

For the reasons set forth below, WU–EE's motion is granted, and Stahlex' motion is denied.

### Prior Proceedings

This action was commenced on March 25, 1999. These motions were heard and marked fully submitted on June 25, 2003. Discovery was commenced and completed, and various motions have been disposed of, familiarity with which is assumed. *See Stahlex–Interhandel Tr.v. W. Union Fin. Servs. E. Europe Ltd.*, No. 99 Civ. 2246, 2002 WL 31359011 (S.D.N.Y. Oct. 21, 2002) (*"Stahlex I"*); *Stahlex–Interhandel Tr. v. W. Union Fin. Servs. E. Europe Ltd.*, No. 99 Civ. 2246, 2003 WL 470328 (S.D.N.Y. Feb. 20, 2003) (*"Stahlex II"*).

### The Facts

The facts are set forth based upon the Local Rule 56.1 statements of the parties and supporting declarations.

On July 26, 1991, Stahlex and WU–USSR entered into a Consulting Agreement providing that in consideration for identifying a partner in the Soviet Union, and in consideration for the promise to perform consulting services, WU–USSR agreed to pay Stahlex $100,000 and 10% of WU–USSR's annual net income generated from the former Soviet Union. The term of the Consulting Agreement was coterminous with the Joint Venture which was entered into by WU–USSR on the same day (the "Joint Venture").

By signing the Consulting Agreement, Stahlex acknowledged that it accurately "set forth the entire and final agreement and understanding of the parties" and that any prior agreement or understanding, whether written or oral, was "terminated." (Consulting Agreement ¶ 6.2.) The Consulting Agreement provided for unrestricted assignment, without consent, to any WU–USSR affiliates. The Consulting Agreement, by its terms, is governed by New York law.

On the day that it entered into the Consulting Agreement, WU–USSR entered into the Joint Venture Agreement with Sberbank, the Soviet bank that Stahlex had identified as a partner for WU–USSR ("the Joint Venture Agreement").

The WU–USSR/ Sberbank Joint Venture operated only through early 1992, when Sberbank went into insolvency. Mezheconomsberbank replaced Sberbank in the Joint Venture, and in October 1993, the Joint Venture Agreement was amended and restated, under the Amended and Restated Foundation Agreement ("Foundation Agreement"), to add a third entity, KOIN, and to bring the organizational and legal form of the Joint Venture into accordance with the Russian Federation legislation. WU–USSR held a 60% ownership

interest in the new Joint Venture, with Mezheconomsberbank holding a 35% interest, and KOIN a 5% interest. The name of the new entity was Western Union MT East ("WU–MT East").[1]

On April 23, 1999, WU–MT East purchased Mezheconomsberbank's interest in the Joint Venture, leaving KOIN as WU–USSR's only joint venture partner. On December 14, 1999, WU MT East purchased KOIN's interest in the Joint Venture.

### The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see generally 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d ed.1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Bickhardt v. Ratner*, 871 F.Supp. 613 (S.D.N.Y.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richard-son v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997).

### Discussion

Paragraph two of the Consulting Agreement states, "the term of this Agreement shall commence on the date hereof and shall continue while the joint venture shall continue to operate." Thus, the question is whether the Joint Venture continued to operate beyond WU–MT East's December 14, 1999 buy-out of KOIN's ownership interest. This hinges on "whether or not a buy-out of a joint venture, as a matter of law, terminates the joint venture," an issue expressly reserved in the previous *Stahlex* opinions. *Stahlex II*, at *3–4.

### A. The Buy–Out Terminated the Joint Venture

■ By its very definition, "[a] joint venture is a special combination of two or more persons where in some specific venture a profit is jointly sought." *Gramercy Equities Corp. v. Dumont*, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 911, 531 N.E.2d 629 (1988) (quotations omitted). *See also Stahlex I*, at *11 (noting that Black's Law Dictionary defines a joint venture as a "business undertaking by two or more persons."). Accordingly, an entity cannot constitute a joint venture unless, at a minimum, it is carried on "between two or more parties." *ESI, Inc. v. Coastal Power Prod. Co.*, 13 F.Supp.2d 495, 498 (S.D.N.Y. 1998) (*citing Itel Containers Int'l Corp. v.*

---

1. WU–MT East's official short-form Russian name is Western Union DP Vostok Ltd.

*Atlanttrafik Express Service Ltd.*, 909 F.2d 698, 701 (2d Cir.1990); *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184, 1201 (S.D.N.Y.1996); *Tilden of New Jersey, Inc. v. Regency Leasing Sys., Inc.*, 230 A.D.2d 784, 785–86, 646 N.Y.S.2d 700, 701 (2d Dep't 1996)).

■ Therefore, "[i]f there are only two parties to a joint venture, the sale by one of them of his interests in the enterprise to the other necessarily dissolves their contractual relation." 48A C.J.S. Joint Ventures § 19 (2002). *See also N. River Ins. Co. v. Spain Oil Corp.*, 135 Misc.2d 480, 515 N.Y.S.2d 703, 705 (1987) ("It is undoubted that the joint venture terminated when [one partner] purchased his conventurers' interests."). It makes no difference whether the coventurers' interests are purchased by the remaining partner or by the entity itself. Under either scenario, the remaining partner is left as the sole owner of the entity and its rights and obligations.

Thus, there is no longer a joint venture in this case. The group of parties that jointly owned WU–MT East no longer does so, and WU–MT East is now owned by a single entity, WU–EE (formerly WU–USSR). It is true that WU–MT East and WU–EE/ WU–USSR are two separate companies, one a Russian Limited Liability Company and the other a Delaware Corporation. However, they are not now, nor have ever been, engaged in a joint venture together. Rather than working as WU–USSR's partner, WU–MT East has served as the money transfer agent of Western Union Financial Services, Inc. When WU–MT East purchased Mezheconomsberbank's and KOIN's interests, WUUSSR became the sole owner of WU–MT East and its assets and obligations.

■ Stahlex argues that the business of the Joint Venture continues to operate and WU–MT East, the entity that Stahlex helped to create, continues to exist. This may be so, but WU–MT East, in its current form, is no longer a joint venture. The Consulting Agreement explicitly refers to the operation of a "joint venture." (Consulting Agreement ¶ 2.) Stahlex and WU–USSR could easily have tied the Agreement's duration to the continued existence of the business in which the Joint Venture is engaged, but instead they chose to tie it to the continuance of the Joint Venture itself.

The *Grossman* case, cited by Stahlex, is inapposite to the present case. It deals with the impact of a conversion from a partnership to a corporation on leases held by the partnership. The court ruled that the leases could be assigned to the corporate subsidiaries, "which had been operating the stores from the time the leases were executed." *Grossman v. S.E. Nichols Co.*, 35 N.Y.2d 985, 1975 N.Y. LEXIS 1705, at *2 (1975).[2] With regards to the landlords, "the conversion of the partnership to a corporation was a change in form only." *Id.* Furthermore, "considering the procedures outlined in the partnership agreement [providing for the formation of a corporation upon the death of one of the partners], and fulfilled to the letter after the principal's death, his death could not be held to work a termination on the leases." *Id.* at 3.

Stahlex further cites 26 U.S.C. § 708(b)(1)(A) in support of the notion that a partnership continues to exist as long as its business continues to operate "by any of its partners." However, 26 U.S.C. § 708 states that the business must continue to operate "by any of its partners *in a partnership,*" which is not the case here.

**2.** The leases further provided that the consent of the landlord to the assignment of the case

"was not to be unreasonably with-held." *Id.* at 1.

(emphasis added). Thus, 26 C.F.R. § 1.708–1 implements § 708(b)(1)(A) with the following example:

> [O]n November 20, A and B, each · of whom is a 20–percent partner in partnership ABC, sell their interests to C, who is a 60–percent partner. Since the business is no longer carried on by any of its partners *in a partner-ship,* the ABC partnership is terminated as of November 20, 1956.

(emphasis added). Similarly, in *McCauslen v. Comm'r,* 45 T.C. 588, 1966 WL 1242 (1966), when one partner in an equal, two-person partnership died, and his partnership interest was purchased from his estate by the remaining partner, the purchase caused a termination of the partnership under § 708(b)(1)(A). *See also* Rev. Rul. 67–65 (1967) 1967–1 CB 168 (ruling that the surviving partner's purchase of the deceased partner's interest in their partnership resulted in the partnership's termination under section 708(b)(1)(A) since "the business is. no longer carried by any of its partners in a partner-ship.").

Likewise, under Rev. Rul. 99–6 (1999) 1999-6 IRB 6, where an LLC is converted to a single member disregarded entity through the sale of member interests to a single remaining member, the partnership is terminated. The selling partner must treat the transaction as a sale of the partnership interest under § 741, and the partnership is deemed to make liquidating distribution to the remaining partners. Where all members of an LLC sell their interests to a single person, the transaction is also treated as a liquidation, followed by the sale of the assets to the new partner.

## B. *Liquidation is not a Prerequisite to the Termination of a Joint Venture*

■ Stahlex additionally argues that the Joint Venture continues to operate since there has never been a liquidation of its affairs. The parties agree that WU–MT East continues to operate as a credit union and that there has been no attempt to wind up its claims and obligations. However, there is some authority to treat the sale of all but one member's interests in the venture to WU–MT East as a liquidating distribution. Rev. Rul. 99–6 (1999) 1999–6 IRB 6; Rev. Rul. 67–65 (1967) 1967–1 CB 168 ("[T]he purchasing partner is considered to have received as a distribution in kind, through liquidation of his partnership interest, those assets attributable to his former interest in the partnership."). In any case, WU–MT East no longer operates as a joint venture.

■ A provision in the Foundation Agreement states that the agreement terminates upon liquidation of the Joint Venture. However, it does not state this is to be the sole condition that can effect a termination. WU–USSR/ WU–EE's claim that the Joint Venture was terminated is based not on the partners' formal agreement, but rather on the operation of law. "[U]nless a contract provides otherwise, the law in force at the time the agreement is entered into becomes as much party of the agreement as though it were expressed or referred to therein, for it is presumed that the parties have such law in contemplation when the contract was made and the contract will be construed in the light of such law." *Dolman v. United States Trust Co. of NY,* 2 N.Y.2d 110, 116, 157 N.Y.S.2d 537, 138 N.E.2d 784 (1956). *See also Mayo v. Royal Ins. Co. of Am.,* 242 A.D.2d 944, 945, 662 N.Y.S.2d 654 (4th Dep't 1997) (same).

■ In terms of previous obligations incurred by a joint venture, New York law draws a distinction between pre-liquidation and post-liquidation termination. Thus, "When a New York joint venture

dissolves upon the withdrawal of one of the venturers, New York law will not recognize it as formally terminated until the former joint venturers have succeeded in winding up their affairs." *Design Cast Stone Sys., Inc. v. NAB Construction Corp.*, 760 F.Supp. 68, 69 (E.D.Pa.1991). *See also Scholastic Inc. v. Harris*, 259 F.3d 73, 84–85 (2d Cir.2001) (recognizing a distinction under New York law between the dissolution and formal termination of a partnership.). Former joint venturers must wait till after liquidation proceedings before they can bring an action against each other. The *North River* case likewise explains that although "[a] partnership or joint venture terminates with the withdrawal of any joint venturer or partners," [s]uch termination ... is not a termination of liability to each other previously incurred. That can only occur among partners and joint venturers upon an accounting or release. The termination which occurs on withdrawal or agreement is a prospective termination, that is, the partnership or joint venture no longer engage in any new undertakings. A partnership or joint venture, however, continues to exist for the purpose of winding up claims and obligations. *N. River Ins.*, 515 N.Y.S.2d at 705 (citations omitted). *See also Scholastic Inc.*, 259 F.3d at 85 ("New York law limits a dissolved partnership's assumption of future liabilities to those necessary for the winding-up process."). Thus, WU–MT East can take on no new obligations as a joint venture, ceasing to operate as one.

In the *Scholastic Inc.* case, the court held that whether a partnership continues to operate during liquidation is a question of fact for the jury to resolve. This is the case as "the term 'operations' is reasonably susceptible to differing interpretations," and the jury must determine whether the parties intended that it be given "an expansive or narrow meaning."

*Scholastic Inc.*, 259 F.3d at 84. In the present case, there is no similar ambiguity. There are no impending liquidation proceedings, and it is a question of law whether a buy-out will effect a termination of a joint venture. There is no dispute that WU–MT East is now owned entirely by one party. Thus it cannot legally be operating as a joint venture.

## C. The Foundation Agreement Did Not Terminate the Joint Venture

■ Section 18.1 of the Foundation Agreement states:

> Each participant acknowledges and agrees that the Joint Venture shall, upon the due registration of this Agreement and the Charter by the Chamber, be reorganized into the Company, and the Company shall succeed to and possess all rights and obligations (as modified by the May 20 resolutions and February 5 Letter) of the Joint Venture.

Thus, the Foundation Agreement created WU–MT East, an LLC with a perpetual term, as the successor to the initial Joint Venture with Sberbank.

As the parties agree, the Consulting Agreement and Joint Venture survived the Foundation Agreement. Unlike WU–MT East's December 14 buy-out of the last co-venturer, the Foundation Agreement was only a change of form. The Foundation Agreement simply restated the Joint Venture Agreement in accordance with Russian Federation Legislation. Prior to the buy-outs, WU–MT East continued to be run as a joint venture, fulfilling the fundamental condition of two or more parties working as partners in a business venture.

### Conclusion

For the reasons set forth, partial summary judgment is granted in WU–EE's favor.

Enter judgment on notice.

It is so ordered.