■ HAROLD R. ESKENAZI, Respondent, v JULES W. SCHAPIRO, Appellant. [812 NYS2d 474]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered January 11, 2005, which, to the extent appealed from, denied defendant's motion, brought pursuant to CPLR 3211 (a) (7), to dismiss plaintiff's first cause of action asserting breach of contract, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff Harold R. Eskenazi, defendant Jules W. Schapiro, and six other individuals entered into a joint venture, pursuant to an agreement dated July 1980, in order to "purchase, own and sell the apartments designated . . . in the premises known as 135 East 83rd Street, New York, New York." The building was, at that time, rent stabilized and the cooperative conversion sponsor had to sell the subject apartments to complete the conversion. The joint venture contemplated that each of the members would own one or more units in their own names, and it was anticipated that the rental income would exceed the carrying costs and at some later juncture, the units would be sold and the profits distributed. Defendant, pursuant to the agreement, was to maintain the books and records of the joint venture and to make them available to any of the members "upon reasonable notice." Plaintiff became the owner of apartment 3-D.

Defendant, by letter dated June 6, 1995, informed plaintiff that as of that date, four apartments still remained unsold, that the joint venture was operating at a substantial deficit due, inter alia, to mounting expenses in maintaining the apartments, and that he was personally owed $78,208.02 as the result of personal contributions made to keep the joint venture solvent.

The sponsor, which had been advancing maintenance payments to the cooperative corporation on behalf of the joint venture, and which was also owed considerable sums, subsequently offered to release the members of the joint venture from liability in exchange for surrendering their interests in the remaining units. Defendant maintains that the sponsor emphasized that any member who did not agree to its terms would be subject to foreclosure pursuant to the security agreements each individual member had signed. Defendant, by letter dated September 25, 1997, apprised plaintiff of the joint venture's precarious financial situation, and stated: "the sponsor who sold us the 8 apartments insists upon being made whole for the monies that are due to him since inception. I have previously sent you copies of expenses allegedly due to the Sponsor which showed that even if we sold the remaining 4 apartments at market value, there would be a shortfall.

"Rather than waiting for the Co-op to start a proceeding for the arrears in maintenance, it is my feeling that we should assign our interest to the Sponsor who will pay all of the arrears and hold us individually harmless and deliver a General Release. We will have no further obligation in connection with the 4 remaining apartments.

"Please call me regarding the above since the Sponsor wishes this matter to be concluded by October 1, 1997."*

The remaining unit owners, with the exception of plaintiff, agreed to surrender their apartments effective December 1997, pursuant to releases of liability executed in favor of the sponsor. Plaintiff, in addition to refusing to surrender his unit, also refused to contribute toward the accumulated maintenance costs and unpaid interest. The sponsor, by letter dated April 14, 1998, advised plaintiff that it was assigning the shares and proprietary lease appurtenant to the apartment back to the sponsor due to plaintiff's default, which it claimed was in excess of $100,000.

Plaintiff eventually commenced the within action by the service of a summons and verified complaint dated February 26, 2004. The complaint interposed four causes of action asserting, respectively, breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. Defendant moved to dismiss the complaint in its entirety and the motion court granted the motion to the extent of dismissing plaintiff's second, third and fourth causes of action, but declined to dismiss the breach of contract claim.

Defendant maintained, with regard to the breach of contract cause of action, that the joint venture terminated in December 1997 when all of the remaining members of the joint venture, with the exception of plaintiff, surrendered their apartments, and that the breach of contract claim accrued at that point, rendering it time-barred. The motion court, however, found that because the agreement provided that the joint venture was to continue until the sale of all of the apartments, unless it was terminated by written agreement, and since plaintiff refused to sell his apartment and no written termination agreement existed, the release and surrender of the other apartments did not serve to terminate the joint venture. We disagree and reverse.

It is well settled that "[a] joint venture . . . is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are

---

* Plaintiff's apartment was one of the four unsold units.

equivalent to those of a partnership," and, as a result, it is proper to look to the Partnership Law to resolve disputes involving joint ventures (*Gramercy Equities Corp. v Dumont*, 72 NY2d 560, 565 [1988]; *Sagus Mar. Corp. v Rynne & Co.*, 207 AD2d 701, 702 [1994]).

Section 62 (2) of the Partnership Law provides that: "Dissolution is caused: . . . 2. In contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time."

In *Cahill v Haff* (248 NY 377 [1928]), the Court of Appeals, citing to Partnership Law § 62, observed that notwithstanding provisions in a partnership agreement involving the termination of the partnership, any partner may repudiate the agreement at any time, reasoning that "[n]o agreement can prevent this result. No one can be forced to continue as partner against his will. He may be liable for breach of contract. Nothing more" (at 382; *see also Staines Assoc. v Adler*, 266 AD2d 52 [1999] [sufficient evidence existed from which to conclude that the partnership had been dissolved when defendant transferred title to the partnership's primary asset, a residential brownstone in which the parties resided on separate floors, to himself individually, and encumbered the property with a mortgage, the proceeds of which he alone received]).

In this matter, it is clear that the joint venture was unprofitable and that all of the remaining members, with the exception of plaintiff, were aware of this and believed it wiser to surrender their apartments than to invest additional monies or risk foreclosure. It was at this juncture, in December 1997, that the joint venture terminated. To find otherwise would perpetuate a valueless joint venture, ad infinitum, regardless of the fact that plaintiff was its sole member.

Accordingly, the six-year limitations period in which plaintiff could have timely brought this claim for breach of contract and/or an accounting (*see Sagus Mar. Corp.*, 207 AD2d at 702) began to run in December 1997 when the joint venture ceased to exist, rendering the first cause of action untimely.

We find, in any event, that plaintiff's breach of contract claim should have been dismissed for failure to state a cause of action. Indeed, it is difficult to ascertain exactly what provision of the agreement defendant is alleged to have breached, as defendant notified plaintiff, as well as the other members, in June 1995 of the joint venture's precarious financial condition, and continued to update them through correspondence, yet plaintiff waited

almost nine years to conclude an accounting was warranted and to bring this action. Concur—Tom, J.P., Saxe, Nardelli, Catterson and Malone, JJ.